449 So.2d 1372 (1984)
Sarah Baxter PETERS, Plaintiff and Defendant in RuleAppellee,
v.
William Burke PETERS, Defendant and Plaintiff in RuleAppellant.
No. 16192-CA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1984.
Bethard & Davis by Walter E. Dorroh, Jr., Coushatta, for defendant and plaintiff in ruleappellant.
Horton & Jones by Donald G. Horton, Coushatta, for plaintiff and defendant in ruleappellee.
Before HALL, MARVIN and SEXTON, JJ.
*1373 HALL, Judge.
In this child custody case, the father of a nine-year-old boy filed a rule for a change of custody against his former wife because she and the child were living with a man to whom she was not married. After trial, the trial court rendered an award of joint custody and the father appealed. The mother neither appealed nor answered his appeal. We affirm the judgment of the district court.
On appeal, the father contends that the trial court erred in awarding joint custody in this case, and instead, should have awarded him sole custody of the boy because of the mother's demonstrated moral unfitness and his better financial ability to provide for the child. He further argues that the trial court's decree is unworkable in providing for a sharing of physical custody of the child on an alternating monthly basis. This plan of sharing, he contends, will create an unstable environment for the young boy. The mother argues that because the parents live so close to each other this plan of sharing will work in this instance. She further argues that the joint custody decree rendered by the trial court is in the child's best interest and it was not an abuse of discretion for the trial court to refuse to award the father sole custody because there was no evidence the child had been detrimentally affected by his current living arrangements.
The parties were married in November 1971. Of this marriage one child, a son, was born. On November 23, 1981, a judgment of separation was rendered on grounds of mutual fault and the mother was awarded custody of their son. On December 9, 1982, a judgment of divorce was rendered on grounds of the parties having lived separate and apart for six months or longer following their judicial separation. Custody of their son was continued with the mother.
In April 1983, the mother and the nine-year-old boy moved into a two bedroom mobile home owned and occupied by a man who was at that time legally separated from his wife. The mobile home was located across the road from a trailer home occupied by the child's father and his new wife. On July 7, 1983, the father filed this suit seeking a change of custody and on August 19, 1983, a judgment decreeing joint custody of their child was signed. This appeal followed.
The law applicable to this controversy is LSA-C.C. Arts. 146 and 157 as amended by Act 307 of 1982, effective January 1, 1983. This case was tried and decided prior to the later amendment of Article 146 by Act 695 of 1983, effective August 30, 1983. Although not directly applicable, the clarifying and detailed provisions of the 1983 amendment serve as helpful guidelines in interpreting and applying the provisions of Article 146 as they read after the 1982 amendment and prior to the 1983 amendment.
Article 157 provides that in cases of change in custody after an original award, custody shall be granted to the parents in accordance with Article 146. Article 146 provides that custody shall be awarded, according to the best interest of the child, to both parents jointly as the first preference. The article establishes a rebuttable presumption that joint custody is in the best interest of a minor child. The article defines joint custody as meaning "the parents shall share the physical custody of children" and provides that "physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents."
The primary purpose of the amendment to Article 146 is to further promote the child's best interest by insuring that whenever possible the physical care and custody of the child will be shared by the parents in such a way as to insure the child of frequent and continuing contact with both parents. The courts are not free to disregard this legislative mandate. Adams v. Adams, 441 So.2d 490 (La.App. 2d Cir. 1983); Plemer v. Plemer, 436 So.2d 1348 (La.App. 4th Cir.1983). The Legislature, by amending Articles 146 and 157 to provide for joint custody, introduced new approaches *1374 and considerations into the judicial determination of child custody matters. See Pleasant v. Pleasant, 448 So.2d 824 (La.App. 2d Cir.1984) and Stewart v. Stewart, 430 So.2d 189 (La.App. 2d Cir.1983).
Each child custody case must be analyzed and judged upon its own peculiar set of facts and relationships involved, with the end in mind of achieving what has always been the paramount objective in such matters, the best interest of the child. The standard of appellate review of a child custody judgment is that great weight is given to the trial court's decision which will not be overturned in the absence of a clear abuse of the trial court's much discretion. Stephenson v. Stephenson, 404 So.2d 963 (La.1981); Cleeton v. Cleeton, 383 So.2d 1231 (La.1980); Monsour v. Monsour, 347 So.2d 203 (La.1977); Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (La.1971); Pleasant v. Pleasant, supra; Stewart v. Stewart, supra; Griffin v. Griffin, 424 So.2d 1228 (La.App. 1st Cir.1982); Hord v. Hord, 407 So.2d 1314 (La.App. 3d Cir.1981); Howes v. Howes, 388 So.2d 1182 (La.App. 4th Cir.1980).
In the instant case counsel for the appellant, in a well-prepared and forceful brief, urges that sole custody of the child should have been changed from the mother to the father because of the mother's moral unfitness and because the father is in a better position to provide the child with material benefits. Taking the latter argument first, we note that although the father is better off financially than the mother and may be able to provide a larger home, there is no showing in this record that the homes in which the mother has lived with the child are not entirely adequate. The evidence establishes that both parties have adequate means to provide for the child's needs and have done so.
Turning to the moral fitness argument, we note that moral fitness of the parents is but one factor, albeit an important one, to be considered when examining the totality of the facts, circumstances, and relationships presented by a particular case in the attempt to reach a decision in the child's best interest. Stewart v. Stewart, supra. The moral fitness of the parties involved is only 1 of 11 factors listed in Article 146 as amended in 1983, to be considered in determining whether the presumption in favor of joint custody has been rebutted by a showing that it is not in the best interest of the child. The parent's attitude toward living with a man whom she plans to marry is but one aspect of moral fitness. Other aspects of moral fitness or unfitness may be more significant in their effect on a child, such as the parent's attitude toward criminal activity, drug abuse, sexual promiscuity in the home, and other activities deemed immoral in our society. In this case there was no evidence of any aspect of moral unfitness on the part of the mother other than her attitude toward and her actions in living with the man she planned to marry.
In spite of changing attitudes and moral standards, "living together" without benefit of marriage, in a home where young children are present, remains widely regarded as immoral and as necessarily having a detrimental effect on a child's moral upbringing. The courts of this state have consistently, in many reported cases, recognized this fact. In almost every case where the parent lived with someone to whom they were not married, and the situation continued through trial of a custody proceeding, the child was removed from the custody of that parent. See, for example, Bagents v. Bagents, 419 So.2d 460 (La. 1982) and Tabor v. Tabor, 421 So.2d 1185 (La.App. 2d Cir.1982). However, in most cases where the parent had married the person with whom they were living, or where the relationship was discontinued prior to trial, the courts did not change custody because the moral detriment to the child no longer existed. Stephenson v. Stephenson, supra; Cleeton v. Cleeton, supra; Monsour v. Monsour, supra; Fulco v. Fulco, supra; Pleasant v. Pleasant, supra; Stewart v. Stewart, supra; Griffin v. Griffin, supra; Hord v. Hord, supra; Howes v. Howes, supra. In some cases where it appeared that the parent married the paramour *1375 after trial, the appellate courts remanded the case to the district court for a new trial so that the fact of the parent's marriage could be considered, the strong indication being that the marriage cured the problem and custody should not be changed. Atteberry v. Atteberry, 381 So.2d 1231 (La.1980), remanding Atteberry v. Atteberry, 379 So.2d 18 (La.App. 3d Cir. 1979); Shackleford v. Shackleford, 389 So.2d 825 (La.App. 3d Cir.1980). In the instant case, counsel for the mother represents in brief that the mother married the man with whom she was living in January 1984, and they now live together as husband and wife. Counsel for the father has not disputed this representation. The trial court's decision in this case is further supported by the fact of the mother's marriage and there is no need to prolong this litigation by remanding the case for proof of this fact and reconsideration by the trial court.
Under the particular facts and circumstances of this case, we find that the trial court did not abuse its great discretion in declining to fully deprive the mother of custody and grant sole custody to the father. After hearing testimony presented by both parties, and after talking in chambers with the child at the request of counsel, the trial court found the boy to be a very well adjusted child who loves both his father and mother and understands that they love him. The court noted the child's good grades in school and noted a total absence of any manifestation that the child was being detrimentally affected by his present situation. While stating that it did not condone the mother's behavior, the trial court noted that the mother's relationship with the man appeared stable and it produced no apparent detrimental effect on the child's well-being. The evidence at trial was that the mother planned to marry the man with whom she was living as soon as legally possible within a relatively short period of time, establishing that the immoral situation in which the child was living was to be of short duration. The mother has now, in fact, married.
The child has lived with the mother for about three years since the parties separated and has gotten along well. Stability of environment and assurance of a continuing close relationship with his mother are strong best interest factors weighing in favor of continued custody in the mother, at least on a joint custody basis.
Faced with the circumstances described, the trial court looked to the joint custody provisions of Article 146 for guidance and correctly interpreted and followed both its letter and spirit. As previously noted, the primary aim of the new provisions is to foster, whenever possible, an arrangement whereby the child enjoys a frequent and continuing relationship with both parents. Under the facts and circumstances of this case, it was not an abuse of discretion for the trial court to follow the directive of the statute and seek to insure frequent and continuing contact between the son and both of his parents in a situation in which such an award would not run counter to the child's best interest. It was not an abuse of discretion for the trial court to decline to fully deprive the mother of custody and grant sole custody to the father.
The father urges that the joint custody plan devised and ordered by the trial court whereby the child is to stay with each parent on alternate months is not workable and is not in the best interest of the child. He urges that such a plan is a Solomon-like approach, dividing the child between the parents.
Joint custody does not necessarily require an equal sharing of physical custody, but it does not preclude such an arrangement in the appropriate situation. Each case must be judged on its particular facts and the trial court is afforded much discretion in its pursuit of the child's best interest. Adams v. Adams, supra; Plemer v. Plemer, supra.
The record reflects that at the time of trial the parties lived across the road from each other in a small, rural community. The record also indicates that the father intended to move from his trailer to a brick home several miles away. However, the *1376 distance involved, assuming the planned move indeed materialized, was not so great as to likely result in hardship either to the child or to his parents under the scheme of physical custody ordered.
Joint custody and shared physical custody are new to Louisiana and run counter in some respects to notions formerly held about the undesirability of a child living part of the time with one parent and part of the time with the other parent. However, the legislative mandate for joint custody with shared living arrangements is strong and positive and the courts must follow the legislative mandate. Joint custody opens the door for plans that assure a continued close relationship between the child and both parents, the primary objective of joint custody, and such plans should be tailored by the trial courts in accordance with the circumstances of individual cases. The plan of monthly alternating living arrangements adopted in this case is not, as a matter of law, either required or prohibited. Whether it will work to the best interest of this particular child under the particular circumstances of this case remains to be seen, but the carefully considered plan devised by the trial court in accordance with the code article should be given a chance to succeed. Undoubtedly, many different plans of shared custody will be adopted by trial courts in the course of administering the new joint custody law. Experience with this new-to-Louisiana concept will, perhaps, develop some guidelines for determining what sort of plans and arrangements seem to most benefit the children involved.
Appellate courts should be very reluctant to interfere with plans ordered by trial courts in the exercise of their discretion after careful consideration, and should do so only where a clear abuse of discretion is demonstrated. No such abuse of discretion is demonstrated in this case.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.