460 So.2d 1175 (1984)
William Gary BLACK, Plaintiff-Appellee,
v.
Shirley Jean Parker BLACK, Defendant-Appellant.
No. 16704-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
Rehearing Denied January 4, 1985.
Writ Denied February 15, 1985.
Stewart & Stewart by Jonathan M. Stewart, Arcadia, for defendant-appellant.
*1176 Culpepper, Teat, Caldwell & Avery, by Bobby L. Culpepper, Jonesboro, for plaintiff-appellee.
Before HALL, JASPER E. JONES and FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
The mother appeals a judgment rendered on a rule filed by the father seeking joint custody of the minor children of the marriage. The judgment awards joint custody with each parent receiving physical custody for alternating six month periods and relieves the father of his obligation to pay child support while he has physical custody. The judgment awards the father the right to claim the children as dependents on his income tax returns.[1] We amend and affirm.
William and Shirley Black were married August 13, 1968. Two children were born of the marriage; Brad on December 8, 1971 and Jennifer on June 15, 1973. The parties legally separated in February, 1980. The mother received provisional custody of the children in the separation proceedings. The father was granted a divorce by judgment signed July 21, 1982. The divorce judgment awards the mother sole permanent custody. The father was awarded specific visitation privileges and was ordered to pay $400.00 per month child support.
The father filed the rule for joint custody on August 12, 1983 and filed with it a joint custody implementation plan in which he proposed that he receive custody for half of each year.[2] He also proposed that he would be willing to continue paying the $400.00 per month child support during the period of time the mother has custody. The mother opposed the rule and the custody plan filed by the father.
Trial was held on February 1, 1984. At trial both parents called a number of character witnesses. The testimony of these witnesses and that of the parents establishes they are good loving parents and have good relationships with the children. The only other witness who testified was a psychologist, Dr. Donald Gucker, who examined the children at the mother's request prior to trial. Dr. Gucker testified that both children are happy and well adjusted with no psychological or emotional problems. He stated that his optimistic assessment of the children's emotional condition indicates the mother and father are excellent parents. Despite these findings Dr. Gucker advised against granting joint custody because he has found that alternating living arrangements, where children live for part of the time in one home and part in another, are emotionally disruptive to some children.
At the close of the evidence the trial judge announced he had decided to grant joint custody with the parents to receive physical custody for equal periods of time. The reasons given by the trial judge to support his decision are:
... I believe that Mr. and Mrs.Gary Black and Shirley Black ... both want the best for their children.... I think you both think the same way, as far as the best for your children herein and what values you want your children to have.... The testimony of everybody here that came was that both Mr. Black andGary Black and Shirley Black were good parents. I've never had a case where both parties were so near the same herein and I don't think that a more fit case for trying the joint custody and when I'm saying joint custody, I think the intent of the act was at least was the fifty-fifty custody of the children herein. As I said before, I don't know that it was. I think the law tells that it should work. I think it tells us that this is the presumption. I think I'm burdened with the responsibility herein of *1177 dividing the children fifty-fifty between the parties. I see no good reason not to.... I think the law says it should be fifty-fifty, basically speaking, unless there is a reason to say different. I see no reason why it should be different, from the testimony herein....
After announcing his decision the trial judge gave the parties several days to work out a custody implementation plan. The parents failed to agree to a plan and the trial judge devised his own which was incorporated into the judgment.
The issues raised on appeal are:
(1) Whether joint custody is in the best interest of the children;
(2) If joint custody is in the best interest of the children, whether the trial court erred in awarding physical custody on an equal time basis; and
(3) Whether the trial court erred in modifying the father's child support obligation and in determining who could claim the children as dependents for income tax purposes.

Issue # 1
LSA-C.C. art. 157 provides that changes in child custody after an original award shall be made in accordance with LSA-C.C. art. 146. Article 146 provides throughout that custody shall be awarded in accordance with the best interest of the children. The article establishes an order of preference for a custody award with custody to both parents jointly being the first preference. 146 A(1). The article further establishes a rebuttable presumption that joint custody is in the best interest of the minor children. 146 C.
The presumption in favor of joint custody may be rebutted upon a proper showing that a different arrangement is in the child's best interest. Such a showing must include a consideration of eleven specific factors plus any other factor which the trial court deems to be relevant. 146 C(2)(a)-(l);[3]Turner v. Turner, 455 So.2d 1374 (La.1984).
The trial judge stressed the equal fine qualities of the respective parents in his reasons for judgment but failed to articulate reasons why the joint custody was for the best interest of the children. The supreme court pointed out in Turner v. Turner, supra, the best interest of the child is, "the sole criterion to be met in making the award." Implicit in the trial judge's joint custody award is a finding that, considering the factors listed in 146 C(2), the statutory presumption in favor of joint custody had not been rebutted. Our review of the 146 C(2) factors in light of the record reveals:
(a) The parties both love their children and the children love them. The children may have stronger emotional ties with their mother since she has had sole custody for over four years but there is no indication that they would not develop equal ties with their father in a joint custody arrangement.
*1178 (b) Both parties are equally capable of giving the children love, affection and guidance. The children will be able to attend the same school and church and participate in the same activities regardless of which parent has physical custody. We note that both parents are educators[4] and both attend the same church.
(c) There is no indication that either party is incapable of providing the children with food, clothing, medical care or other material needs.
(d) The mother currently resides in the former family home and the children have resided there since they were infants.
(e) Both parties appear to reside in permanent homes.
(f) There is no indication that either party is morally unfit.
(g) There is no indication that either party is mentally or physically unhealthy. Dr. Gucker opined that both parties are mentally healthy since their children appear to be.
(h) The children are well behaved, make respectable grades and present little need for discipline. There is some indication that they occasionally become overly emotional at home and school. This appears to be due to the fact that they were deeply affected by their parents divorce. There is no indication that the situation would be aggravated by a joint custody award.
(i) The children neither testified at trial nor discussed their preferences with the trial judge. The testimony by the mother and Dr. Gucker that the children prefer their mother retain custody, which is in conflict with the father's testimony that the children told him they wanted to be with him half the time, is hearsay and appears to be unreliable. It was established that the children strive not to hurt either parent and may express different preferences as to their living arrangements depending on whom they discuss the topic with.
(j) The record indicates that each party encourages the children to have a close relationship with the other. The mother argues in brief that the parties are unable to communicate and agree upon anything of importance in respect to the children. The record does not support her argument. There is no indication that the parties disagree as to how the children should be raised. Their disagreements in respect to the children appear to be primarily limited to custody and visitation matters.
In Turner v. Turner, supra, the supreme court reversed a joint custody award, as not being in the best interest of the children, in part because the parties were constantly fighting over custody. There is no indication in the instant record that the problems between these parties are nearly as great as those in Turner. We note that in Turner the parents also had major differences over how the children should be raised.[5]
(k) It was not established at trial how much distance is between the parents' residences. They are at least close enough that the children can go to the same school and church and participate in the same activities whether they be residing with their mother or their father.
(l) Other factors we consider are: (1) Joint custody will enable the children to develop a more meaningful relationship with their father[6] and both children may benefit from additional exposure to a father figure. See In re EWB, 441 So.2d 478 (La.App. 2d Cir.1983); (2) The father has *1179 remarried. His current wife testified she has a good relationship with the children and is in favor of a joint custody arrangement.
Giving due weight to each of these factors, we find the mother failed to rebut the presumption that joint custody is in the best interest of the children. The mother argues that great weight should be afforded Dr. Gucker's unrebutted testimony that joint custody is not in the best interest of the children. Dr. Gucker's objections to joint custody are general in nature. He pointed to no specific reasons why joint custody is not in the best interest of these particular children. In light of the legislative pronouncement that joint custody is presumed to be in the best interest, Dr. Gucker's general objections to the concept are entitled to little, if any, weight.

Issue # 2
Joint custody is defined by 146 D as follows:
D. For purposes of this Article, "joint custody" shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph (C)(2). Joint custody shall also mean that the parents shall enjoy the natural cotutorship of such children in accordance with Article 250, subject to the plan of implementation effected pursuant to Paragraph A of this Article. Physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents....
The article gives no guidance as to how physical custody is to be divided. The jurisprudential rules on the subject are that each case must be decided on its own peculiar set of facts and the trial court's decision is entitled to great weight and will not be disturbed on appeal absent manifest error. Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir.1984); Peters v. Peters, 449 So.2d 1372 (La.App. 2d Cir.1984).
The mother first argues the trial court erred as a matter of law in holding the law required that physical custody be awarded on an equal time basis. This court has consistently held that joint custody does not necessarily mean an equal sharing of time. Hickman v. Hickman, supra; Peters v. Peters, supra; Adams v. Adams, 441 So.2d 490 (La.App. 2d Cir. 1983). In Adams we announced the following rule:
While shared physical custody does not necessarily mean a fifty-fifty sharing, no reason is presented in this case why the parents, both entirely suitable and capable, should not share physical custody of the less than two-year-old child on a substantially equal basis, or that "domiciliary arrangements" should not be such that the child lives with each parent for substantially equal periods of time. There may be reasons why the child should live with one of these parents more of the time than with the other, but any such reasons do not appear in the record of this case.
The reasons for judgment clearly reveal that the trial judge felt he was required to grant an equal sharing of custody only because no sound reasons were presented to indicate that some other arrangement was preferable. The trial judge's determination substantially follows the rationale of Adams and we find no error in that determination.
The mother contends the sharing of physical custody on an equal time basis is not in the best interest of the children. She proposes an arrangement whereby she will receive physical custody for substantially the entire school year and the father will receive physical custody for most of the summer vacation. If the children were required to change schools when they changed residences, pursuant to the joint custody award, we might agree that the joint custody award ordered by the trial court is not in the best interest of the children. However, the children will be *1180 able to attend the same school regardless of which parent has physical custody.
In light of the trial court's great discretion in child custody determinations and because of our findings in respect to the 146 C(2) factors, we find no manifest error in the trial court's decision to grant physical custody on an equal time basis.

Issue # 3
The mother contends the trial court erred in modifying the father's child support obligation and in allowing the father to claim the dependency exemption for the children on his income tax return because neither relief was prayed for. Both issues are addressed in 146 A(1)(c) which states:
(c) Child support, (i) An award of joint custody shall not eliminate the responsibility for child support. Each parent shall be responsible for child support based on the needs of the child and the actual resources of each parent. If a parent would otherwise be unable to maintain adequate housing for the child and the other parent has sufficient resources, the court may order modified support payments for a portion of housing expenses even during a period when the child is not residing in the home of the parent receiving support. An order of joint custody, in and of itself, shall not constitute grounds for modifying a support order.

(ii) In addition, a provision for child support shall consider the impact of any dependency exemption granted to a parent by provisions of any revenue law and shall allocate such exemption to either parent.... (emphasis added)
Part (i) clearly provides that the mere changing of a custody award from sole custody to joint custody does not warrant a modification of child support unless the party seeking the modification of support proves he is entitled to it. A party seeking a modification of a child support award must show a substantial change in circumstances supporting the modification. Updegraff v. Updegraff, 421 So.2d 1165 (La.App. 2d Cir.1982). The only relevant change of circumstances shown is the change in the custody award.[7] Part (i) specifically prohibits a modification on that basis alone. The trial court erred in modifying the father's support obligation in the absence of evidence showing a change of circumstances.
Although it is in the section concerning child support awards, part (ii), when read in conjunction with the lead paragraph of 146 A(1), authorizes the adjudication of the right to claim the dependency exemption in a joint custody award. The parties currently stand in a posture where the father is required to pay $400.00 per month child support for the entire year and he has physical custody of the children for six months each year. We find no error in the trial court's determination granting the father the right to claim the dependency exemption.

DECREE
The judgment of the trial court is amended to delete the sixth paragraph which contains the child support award and to substitute in its place the following provision:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that WILLIAM GARY BLACK continue paying the child support ordered by the divorce judgment of July 21, 1982.
As amended the judgment is AFFIRMED. Costs are assessed equally between the parties.
FRED W. JONES, Jr., dissents with written reasons.
FRED W. JONES, Jr., Judge, dissenting.
The trial judge apparently assumed, incorrectly, that joint custody mandates an *1181 equal sharing of physical custody. I agree with the mother, who has been the primary nurturing parent of these children, and with Dr. Gucker, the psychologist, that in this case giving the father equal physical custody of the children during the school year would be unduly disruptive and not in the best interest of the children. Consequently, while retaining the joint custody provision of the trial court judgment, I would award physical custody of the children to the mother during the school year and award physical custody of the children to the father during the summer vacation.
To the extent described, I respectfully dissent.
NOTES
[1] The judgment also specifies the rights and obligations of the parties and grants specific visitation privileges to the non-custodial parent. These provisions are not directly questioned on appeal.
[2] The father proposed that he receive custody for the first half of the school year and the first half of the summer vacation.
[3] The 146 C(2) factors are:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to provide the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute.
[4] The father is the principal of the Jonesboro Hodge Junior High School and the mother is a teacher at this school.
[5] We further note that if the parties are unable to make the joint custody arrangement work without any major complications due to the fault of one party, the other party would have grounds to seek a change in that arrangement.
[6] The father testified: "I would like to have equal opportunity for the children to know me as a parent ... And I feel that I can provide the substantial contribution from experience with children and especially in my job responsibility I see things that I think I can help them with. And I think that the opportunity that I could be provided with by having them more of the time would give me that opportunity to provide what I could for them."
[7] The record does show the income of both parties; however, it does not reveal whether there has been a change in income since the initial support award nor does it contain any evidence as to the needs of the parents or of any change in need which may occur as a result of the joint custody award.