FRED W. JONES, Jr., Judge.
The mother appealed a judgment awarding sole custody of her four year old daughter to the father. We find the statutory presumption in favor of joint custody has not been rebutted and reverse; render judgment decreeing joint custody; and remand the case with instructions.
The parents were married in 1980 and the child was born in 1981. The couple lived in Coushatta with the father’s parents until their separation in 1983 when the mother and child returned to the mother’s parents in South Carolina. The father filed for legal separation in June 1983, and in uncontested proceedings the parties were awarded joint custody. The child remained with her paternal grandparents between July and December 1983 (the father’s six months of custody). Between January and June 1984, the child lived with her mother in South Carolina and the second half of the year she again lived with her paternal grandparents (the father had taken a job in Bossier City and lived in an apartment there).
The mother sought sole custody in September 1984, alleging that the child had not lived with her father, who was living with, but not married to, a woman in Bossier City. The father countered with his own rule, alleging he had remarried, had a sta *689 ble job and income and could best provide for the child. After trial in October 1984, the trial judge awarded custody of the child to the paternal grandparents in January 1985. This award was not appealed.
In July 1985, the mother filed this rule seeking sole custody, or, in the alternative, joint custody. At the conclusion of the trial in September 1985, the trial court ruled the father should have sole custody with a six months transitional period so the child could adjust to living away from her grandparents. The mother was awarded visitation of two and one-half months in the summer and Christmas Day through the end of January every year, until the child reaches school age. Once the child is attending school, the visitation will include alternating Thanksgiving and Christmas holiday seasons (approximately one week each).
The mother contends the trial court abused its discretion by not granting her sole custody and, in the alternative, the trial court erred in finding the statutory presumption in favor of joint custody had been rebutted. The paternal grandparents do not appeal this judgment.
La.C.C. Article 157 provides that changes in child custody, after an original award, are to be made in accordance with La.C.C. Article 146. The latter article stipulates custody awards shall always be predicated upon the best interest of the child. Further, it establishes an order of preference for custody awards, but states there “shall be a rebuttable presumption that joint custody is in the best interest of a minor child.” Article 146(C).
The burden of proving joint custody is not in the best interest of the child is upon the party seeking sole custody. Article 146(A)(2); Turner v. Turner, 455 So.2d 1374 (La.1984); Roberts v. Roberts, 460 So.2d 1151 (La.App. 2d Cir.1984). This presumption in favor of joint custody may be rebutted by a showing that an arrangement other than joint custody is in the child’s best interest. Consideration must be given to the eleven factors listed in Article 146(C)(2) and to any other deemed relevant by the trial judge. Turner, supra; Black v. Black, 460 So.2d 1175 (La.App. 2d Cir.1984), writ denied, 463 So.2d 1318 (La. 1985).
The trial court’s decision is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Cole v. Cole, 467 So.2d 872 (La.App. 2d Cir.1985).
Our factual review of this record leads us to conclude the presumption in favor of joint custody was not rebutted and that the trial judge did not adequately apply the eleven factors of La.C.C. Art. 146. The trial court apparently based its decision on what was deemed an “undesirable situation” at the mother’s home. There the child would be in a day care facility on weekdays [the same as she would be when with her father]; the child would thus “lose contact with her mother and maternal grandparents for a substantial portion of every day” [the child did this without detrimental effect during her summer visits and she would likewise “lose contact” if living with her father]; the mother’s boyfriend came over almost every evening [the boyfriend and the child got along well]; and finally, the boyfriend would spend the night “whenever [the mother and the boyfriend] felt like it” [the mother testified that on occasion he would spend the night, but only when the child was in Louisiana]. The trial court’s conclusion that the presumption was rebutted is not supported by the record.
We consider the factors suggested by the statute: (a) Love/affection — There is Apparent love and affection between the child and both her parents and grandparents; (b) Religion —The mother is a regular church-goer. The father testified he is not a church member. When the child attends church in Louisiana it is with her grandparents; (c) Capacity to provide material needs — Both parents have regular employment. The mother works as a bookkeeper and is purchasing a house trailer in South Carolina. The father is employed as a jet engine mechanic and, with his present *690 wife, is purchasing a, house. His wife works for an insurance company. Affidavits of both parents indicate each parent’s monthly expenses exceed his or her income. The only evidence regarding child support showed that the father provided only irregular support and not over $500 total when the child lived with the father’s parents. The mother received no support when the child lived with her and paid no support when the child lived in Louisiana; (d) Continuity — The child has lived the majority of her life with her paternal grandparents in Louisiana. She had lived slightly over a year with her mother in South Carolina and with her father only occasionally; (e) Stability of the environment — The environment of each appears stable with a strong extended family support for the child in Louisiana and South Carolina. Because each parent works, the child will be in a day care facility when not in school. She has stayed in the facility in South Carolina but has not been in the facility where she would attend when living with her father. The father testified he and his wife intend to start their own family as soon as possible. The mother has contemplated marriage with her regular boyfriend, but has no immediate plans. The child gets along well with her mother’s boyfriend; (f) Moral fitness — Both parents appear morally fit, notwithstanding testimony that the father lived with his present wife before marrying her and that the mother’s boyfriend occasionally spends the night with the mother when the child is in Louisiana; (9) Mental/physical health —Each parent appears mentally and physically fit; (h) Home/school/community record of the child — Day care supervisors in South Carolina testified favorably about the child’s activities while at the center. No formal education or community records on this child were introduced; (i) Child’s preference —Each parent understandably indicated the child preferred to be with that parent. The trial judge did not interview the child; (j) Willingness to work with other parent — Some animosity exists between the parents. However, when a specific plan of joint custody or visitation has been in effect, the parties abided by it. While the original joint custody decree was in force and while the grandparents had custody, the parties successfully lived with that decree; (k) Distance between the parties’ residences — The mother lives in South Carolina and the father lives in Louisiana; (l) Any other relevant factor — The child will become five years old in September and eligible to start school.
No one factor should control whether the presumption of joint custody is rebutted. Each case must be considered on an individual basis and in the light of the best interests of the child. Turner, supra. When reviewing all the factors, we find that both parents are equally fit to care for their daughter and that joint custody is clearly in the best interests of the child.
The father argues that Lachney v. Lachney, 446 So.2d 923 (La.App. 4th Cir. 1984), writ denied 450 So.2d 964 (La.1984), holds that joint custody is not possible when the parents live great distances apart. The Lachney child was living in a very stable environment with her father and the court declined to require that she shuttle back and forth between her parents. Here, the child is not in as stable an environment with her father as she is with her mother. Indeed, she has never lived with her father. The great distance is one factor for concern, but alone does not overcome the presumption or preclude a decision in favor of joint custody. La.C.C. Art. 146(C). See Enlow v. Enlow, 479 So.2d 650 (La.App.lst Cir.1985), where the court affirmed joint custody between parents living in Louisiana and Kansas.
Considering the evidence presented at trial, we find the presumption favoring joint custody has not been rebutted and we conclude the best interest of the child rests in awarding joint custody to her parents.
Article 146 defines joint custody to mean “... the parents shall share the physical custody of the children” and provides that “... physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and *691 continuing contact with both parents.” Joint custody, however, does not necessarily require an equal sharing of physical custody. Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir.1984) and Peters v. Peters, 449 So.2d 1372 (La.App. 2d Cir. 1984).
Considering that the child may be starting school this fall, we find that a joint custody plan of nine months to the mother (September — May) and three months (June —August) and one-half of the Christmas vacation period to the father is in the child’s best interest. This will enable her to begin her education and continue it in the same environment. See Carroway v. Carroway, 475 So.2d 48 (La.App. 2d Cir. 1985) and Cole v. Cole, supra, where we approved joint custody awards of a nine and three month split.
For the reasons set forth, we reverse the judgment of the district court and render judgment decreeing that Jeff Russell Robinson and his former wife, Karen Ann Chestnut Robinson, shall have joint custody of their child, Jessica Chandale Robinson. We remand the case to the trial court to implement the joint custody plan, which shall include a provision that allows the child to live with her mother during the school year and with her father during the summer vacation period and for a portion of certain designated holidays. The parent receiving the child during these periods shall pay for the cost of her transportation. The trial court may consider additional evidence relating to the support requirements of the child, although that is not an issue on appeal.
All court costs, both in the trial court and on appeal, are assessed to Jeff Russell Robinson.