495 So.2d 355 (1986)
Warren D. ALBARADO, Plaintiff In Rule-Appellee,
v.
Pamela TOLER, Defendant In Rule-Appellant.
No. 85-613.
Court of Appeal of Louisiana, Third Circuit.
October 1, 1986.
*356 Paula Kobetz Woodruff, Lafayette, for plaintiff in rule-appellee.
Gregory B. Dean, Peter C. Piccione, Jr., Lafayette, for defendant in rule-appellant.
Before GUIDRY, PICKETT and TUCK[1], JJ.
ROY B. TUCK, Jr., Judge Pro Tem.
This is an appeal from a judgment of the trial court awarding to the divorced parents joint custody of their three daughters.
The parties were legally separated by judgment dated September 8, 1981. The judgment awarded custody of the children to the mother, Pamela Toler, subject to visitation by their father, Warren D. Albarado. The judgment of divorce dated May 26, 1982 continued custody in the mother "subject to reasonable visitation by the father."
For a substantial period of time after their separation the parties lived within approximately one and one-half blocks of one another. The record reflects that there was always free and frequent contact with the non-custodial parent, Mr. Albarado. In September of 1983 Ms. Toler, allegedly due to the demands of her schedule as a nurse and student, voluntarily relinquished physical custody of the three children to their father with whom they have resided since except for periods of visitation with their mother.
In May, 1984 Ms. Toler moved from Lafayette Parish to Houma, Terrebonne Parish, Louisiana. On July 28, 1984 she and Dr. Jules St. Martin Dupont were married and have continued to make their home in Houma.
Mr. Albarado continued to reside with the children in Carencro, Lafayette Parish, *357 where the parties and the children had resided for some years.
During May of 1984 Mr. Albarado permitted the woman whom he intended to marry, together with her three children, to move into his home. There were, however, unanticipated delays in the woman obtaining a final divorce from her prior husband which delayed the marriage beyond the date of trial. As a matter of fact, no marriage took place but, as alleged in brief by both parties to the litigation, the relationship was terminated in March of 1985 and the woman moved out.
On August 14, 1984 Mr. Albarado filed a petition for change of custody in which he prayed that he be granted sole custody of the children or, alternatively, that the children be placed in the joint custody of the parents. After hearing evidence, the trial judge rendered judgment on March 20, 1985 placing the children in the joint custody of their parents with Mr. Albarado as the domiciliary parent. The judgment contains a detailed plan of implementation including frequent and lengthy visitation by the mother. From this judgment Pamela Toler appeals, contending that the trial court erred in awarding joint custody and in making Mr. Albarado the domiciliary parent.
The appropriate standard to be applied by the trial court in determining the custody of a child of a dissolved marriage is that of the best interest of the child and such best interest is the sole criterion to be met in making the award. La.C.C. Art. 146; Turner v. Turner, 455 So.2d 1374, 1378 (La.1984); Clark v. Clark, 467 So.2d 627 (La.App. 3rd Cir.1985); Ferry v. Ferry, 433 So.2d 359 (La.App.3rd Cir.1983).
In La.C.C. Art. 146 there is established a rebuttable presumption that joint custody is in the best interest of the child. This article requires that joint custody be awarded unless, after a consideration of all the evidence, it is determined that joint custody is not in the best interest of the child. Each child custody case must be analyzed and judged upon its own peculiar set of facts and relationships to determine which custodial arrangement will best serve the interest of the child. Peters v. Peters, 449 So.2d 1372 (La.App. 2d Cir. 1984).
Although La.C.C. Art. 146 expressly addresses itself to the issue of disputed custody pending decision of the suit for separation or divorce, La.C.C. Art. 157 makes its provisions applicable to proceedings for change of custody after an original award.
In the instant case the evidence reflects that the children have been well-supplied with all material needs. There is no contention that Mr. Albarado has not provided adequate housing, food, clothing and medical attention. Each of the parents are shown to have adequate homes. No question exists that each parent loves the children, nor that the children love both their mother and father although the conclusion is inescapable that the bonds between the children and the father are closer. The children are excellent students and engage in athletics and various other extra-curricular activities. They regularly attend church and have, at all times, attended a school sponsored by the church of their faith. The record reflects that the children are well-adjusted in the home, school and community where they have spent most of their lives. The testimony of the children indicates that the routine of daily living in the home of the father was much more stable and predictable during the period prior to Ms. Toler's re-marriage. Obviously that may not be the case at this time. Both of these parents have professed and demonstrated a willingness to encourage a continuing relationship between the children and the other parent. It is apparent from the evidence that Ms. Toler stresses the importance of manners, etiquette, music and the arts to a greater extent than does Mr. Albarado. There is, however, no showing that the children have been adversely affected by the less formal lifestyle of their father.
Of more concern is the issue of moral fitness. Certainly moral fitness of a parent is an extremely important factor in custody cases. It is, however, only one of *358 many factors to be considered in the attempt to reach a decision calculated to serve the best interest of the child. Furthermore, the parent's attitude about living with a woman he intends to marry is only one aspect of moral fitness. Just as important may be the attitude of the parent toward crime, sexual promiscuity, and myriad other traits, propensities and activities which are considered by society in formulating standards of morality and immorality.
Formerly, the courts of this state consistently followed the general rule that where a parent had recently lived in open and public adultery with a paramour for a substantial period of time, in total disregard of the moral principles of our society, the parent was morally unfit to maintain custody of children. Johnson v. Johnson, 268 So.2d 114 (La.App.3rd Cir.1972); Kaufman v. Kaufman, 271 So.2d 629 (La.App.1st Cir.1972); Beck v. Beck, 341 So.2d 580 (La. App. 2d Cir.1977). The effects of this rule were softened by the "reformation rule" first adopted by the Louisiana Supreme Court in Fulco v. Fulco, 259 La. 1122, 254 So.2d 602 (1971). Under the reformation rule, when a parent reforms or abstains from any previous course of open indiscretion and probable immorality, the custody of children could be retained by that parent. Fulco v. Fulco, supra; Monsour v. Monsour, 347 So.2d 203 (La.1977); Cleeton v. Cleeton, 383 So.2d 1231 (La.1979); Atteberry v. Atteberry, 379 So.2d. 18 (La. App.3rd Cir.1979) writ granted 381 So.2d 1231 (La.1980); Peters v. Peters, supra; Clark v. Clark, supra. Almost without exception where it appears that the parent lived with some one of the opposite sex to whom they were not married and that situation continued through trial of the custody proceeding, the courts have removed the child from the offending parent's custody. See Bagents v. Bagents, 419 So.2d 460 (La.1982). In those cases where the offending parent had married the person with whom they were living or the relationship had been terminated prior to trial, the courts did not change the custody inasmuch as the circumstance which might adversely affect the child no longer existed. See Cleeton v. Cleeton, supra; Monsour v. Monsour, supra; Fulco v. Fulco, supra. In some cases where the offending parent married the paramour after trial, the appellate courts remanded the case to the trial court for a consideration of this fact. Atteberry v. Atteberry, 381 So.2d. 1231 (La. 1980); Shackleford v. Shackleford, 389 So.2d. 825 (La.App. 3rd Cir.1980). In at least one case where it appeared that the offending parent had married the person with whom the condemned relationship had been conducted after the trial but prior to appellate review, the appellate court found that the trial judge did not err in awarding joint custody and affirmed. Peters v. Peters, supra.
In the instant case the trial judge heard all the evidence, including the testimony of the children whom he questioned at some length. He concluded that the children were highly intelligent, even exceptional, appeared to have no psychological problems and were well-adjusted in school, extra-curricular activities and social contacts. The trial judge expressly noted the unconventional living arrangement of the father and his fiancee but detected no manifestations of detrimental effect upon the children. It is obvious that the trial court was of the opinion that, considering all the circumstances, the best interest of the children was served by maintaining continuity and stability and avoiding a somewhat traumatic change made against the will of the children.
Custody should not be changed to punish a parent for past conduct when there is no proof of a detrimental effect on the children. Everett v. Everett, 433 So.2d 705 (La.1983); Cleeton v. Cleeton, supra; Clark v. Clark, supra. It is essential to consider stability and continuity in determining what is in the best interest of the child. Johnston v. McCullough, 410 So.2d 1105 (La.1982); Bordelon v. Bordelon, 390 So.2d 1325 (La.1980).
In performing its function of deciding custody cases, the trial court is vested with *359 a vast amount of discretion. Proper allocation of trial and appellate functions, as well as the greater capacity of the trial court to observe and evaluate the witnesses, requires that on appellate review great deference must be accorded to the decision of the trial court. The trial court's decision should be overturned only where there is a clear abuse of discretion. Bagents v. Bagents, supra; Clark v. Clark, supra; Ferry v. Ferry, supra.
We recognize the difficulty of the decision which the trial court was required to make. We do not condone the relationship in which the father was engaged but, considering the lack of detriment to the children and their expression of a definite preference to remain with their father, we find that the trial court did not abuse its great discretion. Our finding is reinforced by the mutual concession that the relationship complained of has been terminated. The trial judge's decree provides for considerable and frequent contact with each parent while retaining for the children the benefit of the familiar surroundings which they have known most of their lives.
The appellant also complains of an alleged failure of the trial court to test the competency of the children as witnesses before hearing their testimony. The children were ten (10), eleven (11) and thirteen (13) years of age at the time their testimony was taken. The examination took place in the presence of counsel for all parties. Counsel were invited to ask additional questions, or request the court to do so, but declined.
Age alone does not determine whether a witness is a person of proper understanding and thus competent as a witness. The admission of the testimony of a child addresses itself to the sound discretion of the trial court. Wilson v. Moser, 210 La. 1021, 29 So.2d. 49 (1946).
An examination of the testimony of the three children in this case makes it abundantly clear that the trial judge did not abuse his discretion in admitting the testimony. This contention is without merit.
For the reasons set forth hereinabove the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Judge Roy B. Tuck, Jr. of the 30th Judicial District Court and Judge John S. Pickett, Jr. of the 11th Judicial District Court participated in this decision as Judges Pro Tempore of the Third Circuit Court of Appeal.