KNOLL, Judge.
In this custody dispute, the mother, Madeline A. Spelta, appeals the change of custody of her three minor children to their father, A.J. Bauchmoyer. Madeline contends that the trial court abused its discretion in: 1) ordering a change of custody because she failed to obey the orders of the trial court regarding visitation privileges to Bauchmoyer, where there was no showing of detrimental effect on the children; and, 2) changing custody because she failed to marry her fiancé, Joseph Spelta, in July of 1987. In the alternative, Madeline seeks more liberal visitation privileges. We affirm.
FACTS
Bauchmoyer, age 57 and Madeline, age 42, began living in concubinage in December 1977. They lived together for approximately nine years, residing mostly in Lafayette, Louisiana. Three children were bom of that union: Regina Louise, Karl Celby, and Kenneth Garrett, who were ages nine, six and three, respectively, at the time of the second trial on August 17, 1987, when custody was changed to Bau-chmoyer.
In May of 1986, Madeline and the children left Bauchmoyer and moved to Maryland. She then began living in concubinage with Joseph Spelta, her high school boy friend of approximately twenty-five years *2 ago. Spelta was lawfully married at this time.
While Bauchmoyer and Madeline lived together, unbeknown to Madeline, Bau-chmoyer was lawfully married to Jane Ba-soman Bauchmoyer, who was residing in Texas. Bauchmoyer divided his time between Madeline and Jane. It was not until approximately six months after Madeline left Bauchmoyer that she learned Bau-chmoyer was married to Jane. This was right before Christmas 1986. Bauchmoyer’s marriage to Jane while also living with Madeline does not present any issues before us other than to reflect the moral character of Bauchmoyer.
Bauchmoyer and Madeline are well educated. He sells and markets construction products, and does consulting engineering. He is an engineer by trade. She has: a Bachelor’s Degree in nursing; a Master’s Degree in counseling psychology; a Master’s Degree in child and adolescent mental health counseling; and, at the time of the first trial she was completing her Ph.D. in educational research and statistics. She is also a Captain in the Naval Reserve. The record supports that both litigants’ earnings are in a comfortable income bracket.
When Madeline left Bauchmoyer, she did not tell him she was leaving him. She took the children with her, but she did not tell them they were permanently leaving their father nor that she was going to live with Joseph Spelta. This abrupt departure under false pretenses had a traumatic effect on the children. The only address Madeline left Bauchmoyer was a post office box in Virginia. It was her intention to keep the children away from Bauchmoyer.
When Bauchmoyer, Madeline and the children all lived together in Lafayette, the record supports that they had a close family relationship. The children did not know their parents were not married. Since the family unit broke up, the record supports that there is great conflict between Bau-chmoyer, and Madeline, and between Bau-chmoyer and Joseph Spelta. The children have suffered as a result of the differences between their parents and lack of cooperation of their mother.
Bauchmoyer eventually located Madeline and the children approximately one week after they left. He then filed a petition for custody in Lafayette. On September 29, 1986, a consent judgment was signed, recognizing Bauchmoyer as the natural father of the children and fixed specific visitation privileges in his favor pending the hearing for custody. At that time, Bau-chmoyer was under the impression that Madeline was married to Spelta. The visitation privileges included: any weekend upon five days notice; school vacation holidays for Thanksgiving and Easter; provided for Christmas and New Year’s vacation and a summer vacation; telephone visitation rights; and, the right to check with school authorities to be informed of the children’s school performance. Madeline was cast with return transportation costs of the children. A preliminary injunction was also issued enjoining Joseph Spelta from interfering in anyway with Bau-chmoyer’s visitation rights.
Bauchmoyer was not able to exercise his Christmas visitation rights of 1986 because of Madeline’s refusal to let him see the children. He filed a rule for contempt and attorney's fees based on Madeline’s contumacious conduct. This rule was consolidated with the custody trial and heard on February 19, 1987.
At the custody hearing, it came out that Madeline was not, in fact, married to Spel-ta. He had not yet obtained his divorce. However, on the strength of Atteberry v. Atteberry, 379 So.2d 18 (La.App. 3rd Cir.1979), writ granted, 381 So.2d 1231 (La.1980), writ denied, 386 So.2d 94 (La.1980), the trial court awarded sole custody to Madeline on her promise to marry Spelta by July 1987. Madeline was also found in contempt of court for her contumacious conduct in refusing to let Bauchmoyer exercise his 1986 Christmas visitation privileges with the children, and cast with $750 attorney’s fees.[1]
*3 Shortly after the custody and contempt hearing, Madeline again interfered with Bauchmoyer’s Easter visitation privileges with his children. Bauchmoyer had to employ an attorney from Maryland in order to obtain his children for Easter visitation privileges of 1987.
Then again, where Bauchmoyer called to exercise his Father’s Day visitation of 1987, Madeline sent the children to Arizona at her parents’ home while she was recovering from a miscarriage.
Bauchmoyer then filed another rule for contempt and attorney’s fees, and later amended the rule asking that custody be changed to him for the best welfare and interest of the children based on the violations of his visitation privileges. Madeline also filed a rule asking for an increase in child support, transportation costs and to alter visitation privileges. The rules were consolidated and heard on August 17,1987.
After this hearing, Madeline was held in contempt of court again and cast with $750 attorney’s fees. The trial court changed custody to Bauchmoyer because Madeline was still not married to Spelta and because of her “complete obstinence” in not following the directive of the court. Madeline brings this appeal to change custody back to her.
MOTION TO STRIKE
Bauchmoyer filed his brief in proper person. The brief refers to matters not introduced into evidence. Madeline filed a motion to strike those matters in Bau-chmoyer’s brief that are outside of the record. It is well settled that exhibits attached to a brief are not evidence and cannot form part of the record on appeal. Norton v. Thorne, 446 So.2d 972 (La.App. 3rd Cir.1984), and cases cited therein. This well settled rule equally applies to comments in the brief that are outside of the record. Therefore, we grant appellant’s motion to strike, inasmuch as we will not consider those matters mentioned in brief that were not made part of the record.
CHANGE OF CUSTODY
Madeline contends that the trial court abused its discretion in ordering a change of custody because she failed to obey the orders of the court regarding visitation privileges to Bauchmoyer where there was no showing of detrimental effect on the children. Madeline also urges that she did not in fact deny Bauchmoyer his scheduled Easter visitation of April 1987, thus, her breach was merely technical.
Bauchmoyer was entitled to one week visitation with the children in Lafayette during the Easter holiday, starting on Friday morning April 17, 1987, and ending Sunday, April 26, 1987. The court ordered visitation provided that Bauchmoyer would pay the travel expenses for the children from Maryland to Lafayette, and Madeline would pay their travel expenses on the return trip. Madeline allegedly informed Bauchmoyer, prior to his arrival in Washington, D.C., that she could not afford the expense of flying the children from Lafayette to Maryland.
Bauchmoyer arrived in Washington, D.C. on Tuesday, April 15, 1987. When Bau-chmoyer telephoned his daughter, Regina, the next day, he was informed by Madeline that the children would not be returning to Lafayette with him. Madeline suggested that he stay in the Washington, D.C. area for the week with the children in a hotel room. Bauchmoyer would not agree to that suggestion and an argument ensued, at which point Madeline hung up the telephone. Bauchmoyer called her back approximately fifteen minutes later and asked her if he could see the children the next day. Madeline agreed to this, and Bauchmoyer changed his travel plans to leave Friday night rather than the scheduled Friday morning with the children. Madeline took the children to Bauchmoyer’s hotel between 6:30-7:00 a.m. on Friday morning, April 17th. She picked them up at 4:00 p.m. that evening.
When Bauchmoyer arrived at the airport that night his plane was announced an hour late. He contacted Joseph Whaley, an attorney in Maryland, to see what could be done about Madeline denying his visitation *4 privileges. Mr. Whaley suggested that he stay in Washington, D.C. another day, thus, Bauchmoyer again changed his flight arrangements to depart on Saturday night and went back to his hotel room. Only after Mr. Whaley threatened to get a court order and have Madeline held in contempt of court, did she allow the children to leave with Bauchmoyer. Consequently, Madeline’s attorney brought the children to Bau-chmoyer at the airport on Saturday, April 18th, at 7:00 p.m. Bauchmoyer and the children flew to New Orleans, rented a car, and drove to Lafayette, arriving at 1:30 a.m. Easter Sunday morning.
During the 1987 Easter visitation Madeline and Bauchmoyer briefly discussed Father’s Day visitation for June 1987. Shortly before this visitation came up, Madeline allegedly failed to reach Bauchmoyer on two occasions to tell him she had sent Regina and Karl to Tucson, Arizona to visit their maternal grandparénts while Madeline recovered from a miscarriage. When Bauchmoyer called to get the children for Father’s Day, Madeline told him that he could travel to Tucson to visit the two older children, or he could travel to Washington, D.C. to visit Kenneth. Consequently, Bau-chmoyer did not see any of the children on Father’s Day.
We have carefully examined the record and find that it clearly supports the trial court’s conclusion that Madeline was not going to follow the directive of the court in exercising visitation privileges. In its reasons for judgment, the trial court stated: to tell this Court the reason you didn’t let your husband have visitation was because you didn’t have the money to come pick them up, I don’t believe that was the reason. I believe your reason is the same as it has been throughout these proceedings; and that’s a complete obstinence on your part on following the directive of this Court. This is the second time that you have failed, contemptiously [sic], to follow the orders of this Court.”
Having determined that Madeline greatly interfered with visitation privileges, we must determine if this interference was detrimental to the children. Interference with visitation alone is not sufficient reason to change custody absent a showing of a detrimental effect on the children. Everett v. Everett, 433 So.2d 705 (La.1983).
Dr. Glenn A. Ally, a clinical psychologist in Lafayette, testified as an expert. He examined the children on two occasions: November 1986 and April 22, 1987. Dr. Ally found the children had suffered significant trauma and were not adjusting well to the situation in Maryland. When asked about the detrimental effect a denial of visitation by one parent would have on the children, he testified:
“The children look forward to the input of both parents, and having that parent denied that input is significant for a child.”
Dr. Ally was asked on direct examination:
“Q. And, Dr. Ally, if I told you that in the course of from December of ’86 to the present time this has happened three times — Christmas, New Year’s of ’86; Easter and Father’s Day this has happened three times — what if any impact, in your opinion, would this have on the children?
A. It could be several and, and it’s difficult to specify a particular child. In this particular instance I think the impact can be one, again, disappointment, as I indicated; increasing conflict with the children because they are put in the position of having to please both parents, which is very difficult for them to do.
The third and somewhat, I guess, more global-type of effect this may have is the children witnessing — -by model, if you will — someone disregarding societal rules, regulations, et cet-era, has further implication for moral development in the child.
* * # * * *
A. The greater, or let’s say the more frequent they have an opportunity to witness this type of behaviour [sic], the greater the probability that the *5 children will develop problems as a result of it; correct.”
Dr. Ally also testified that he thinks it is in the children’s best interest to reside with their father in Lafayette, and noted that “the greater harm is to leave them in an environment which is hostile and noncom-pliant.” Dr. Ally was present in the courtroom when Bauchmoyer and Madeline testified, which gave him further insight into the children’s situation.
In addition to Dr. Ally’s testimony, the record shows that the children cannot occasionally speak to their father on the telephone. Both Madeline and Spelta have interfered on these occasions. We find telephone visitation would be particularly important in this case because the great distance between the noncustodial parent and the children renders frequent physical visitation less likely. Mien Bauchmoyer would try to talk to his children over the telephone, the conversation frequently ended up in harsh words with Madeline or Spelta, with the children crying in the background, or, with Madeline or Spelta standing nearby so the children could not speak freely to their father.
Dr. Ally found a great deal of insecurity with the children, and that Regina particularly is still exhibiting some conflict, as manifested in her school performance.
Regina was conditionally passed from the third to the fourth grade while she was in school in Maryland. The comment section on her report card reads: “Due to outside problems, Regina has not been able to absorb as much as needed for the successful transition from third to fourth grade. Tutoring or summer school needed to be promoted.”
The standard of appellate review of a child custody judgment is that great weight is given to the trial court’s decision which will not be overturned in the absence of a clear abuse of the trial court’s much discretion. Peters v. Peters, 449 So.2d 1372 (La.App. 2nd Cir.1984).
One of the factors the court shall consider in ordering custody to either parent is which parent is more likely to allow the child or children frequent and continuing contact with the noncustodial parent. LSA-C.C. Art. 146(A)(2).
We find the record supports the trial court’s conclusion that Madeline has a complete obstinence towards the court’s directives. Further, we find her frequent and major interferences with Bauchmoyer’s visitation privileges has caused a detrimental effect upon the children. Madeline’s attitude towards visitation privileges is completely contrary toward the spirit of LSA-C.C. Art. 146(A)(2).
At the original custody hearing on February 19,1987, she promised the trial court she would marry Spelta in July 1987. At this hearing, August 17,1987, she was still living in concubinage with Spelta. It was on the strength of her promise to marry Spelta that the trial court awarded her custody.
In almost every case where the parent lived with someone to whom they were not married, and the situation continued through trial of a custody proceeding, the child was removed from the custody of that parent. Peters, supra at page 1374.
Madeline contends in brief that she is now married to Spelta. This may be so. However, we find the change of custody was equally merited for her interference with visitation privileges that is detrimental to the children.
VISITATION PRIVILEGES
Appellant seeks more liberal visitation privileges. The trial judge awarded Madeline the same visitation privileges that Bauchmoyer had in the judgment rendered on September 29, 1986, with the following exceptions:
“Paragraph THREE (3) of said Judgment to be changed so that the entire school Christmas and New Year’s vacation of 1987, the children will be with A.J. BAU-CHMOYER, and thereafter, the Christmas and New Year’s vacations to alternate with defendant having the minor children for the holiday season of 1988. Paragraph FOUR (4) of said Judgment to be changed to provide that defendant, MADELINE A. SPELTA, shall have the *6 right to visit with the minor children for a SIX (6) WEEK period of time, at a time which is to be agreed upon by the parties. If the parties cannot agree, the visitation for Mrs. Spelta begins the FIRST (1st) week of JUNE of each year and continues for SIX (6) weeks.”
The judgment rendered on September 29, 1986, excluding paragraphs three and four, provide visitation privileges as follows:
“(1) Any week-end in the area where defendant resides from Saturday at 9:00 a.m. until Sunday at 4:00 p.m. upon FIVE (5) days notice to defendant.
(2) The school vacation holidays for Thanksgiving and Easter of each year commencing from the FIRST (1st) day the children are out for school vacation and returned, so that they will be with defendant at least TWELVE (12) hours prior to school resuming, except that for the THANKSGIVING school holiday of 1986, petitioner will have the right to pick-up the minor children on TUESDAY evening, NOVEMBER 25, 1986, at 6:00 p.m. at defendant's residence.
* # * # * #
(5) Defendant agrees to at all times to keep petitioner informed of her address and telephone number and to allow petitioner to telephone the children at all reasonable times and places.
(6) Petitioner shall have the right to check with all school authorities and shall have equal access to all school records, grades, teachers, etc., so that he may be continually informed of the children’s school performance.
(7) Petitioner shall be responsible for transportation cost of the minor children from defendant’s location, and defendant shall have the transportation cost for transporting the minor children back from petitioner’s location to her home for all summer and school holiday visitation periods. It shall be the responsibility of petitioner to transport the minor children from defendant’s residence to petitioner’s residence. It shall be the responsibility of defendant to transport the minor children from petitioner’s residence to her residence.”
In performing its function of deciding custody cases, the trial court is vested with a vast amount of discretion. On appellate review, great deference must be accorded to the decision of the trial court, not only because of that court’s better capacity to evaluate witnesses, but also because of the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring, 283 So.2d 716 (La.1973), as cited in Bagents v. Bagents, 419 So.2d 460, 462 (La.1982). Accordingly, we do not find a manifest abuse of discretion, and decline to tamper with the visitation decree set forth in the trial court.
For the foregoing reasons, we affirm the judgment of the trial court awarding sole custody of Regina Louise Bauchmoyer, Karl Celby Bauchmoyer and Kenneth Garrett Bauchmoyer to their father, A.J. Bau-chmoyer. Visitation privileges as set forth in the trial court judgment rendered on September 29, 1986, with the noted exceptions, are affirmed. Costs of this appeal are assessed to Madeline Spelta.
AFFIRMED.

. Bauchmoyer appealed that decision. However, that appeal was dismissed upon joint motion after the August 17, 1987, hearing since Bauchmoyer won custody.