378 So.2d 152 (1979)
Gloria June Powers Thom BRIDE
v.
James Alexander THOM, IV.
No. 12896.
Court of Appeal of Louisiana, First Circuit.
November 12, 1979.
*153 Lanny Zatzkis, New Orleans, of counsel for plaintiff-appellant, Gloria June Powers Thom Bride.
Jennifer Luse, Baton Rouge, of counsel for defendant-appellee, James Alexander Thom, IV.
Before EDWARDS, LEAR and SARTAIN, JJ.
EDWARDS, Judge.
Plaintiff, Mrs. Gloria June Powers Thom Bride, (Mrs. Powers) appeals a trial court judgment awarding custody of her two minor children to her former husband, defendant James Alexander Thom, IV. We affirm.
Mrs. Powers and James Thom were divorced on June 28, 1972. On December 20, 1972, the Family Court of East Baton Rouge Parish awarded custody of the children to the paternal grandparents.
Mrs. Powers sought a change of custody in July of 1973 on the basis that she was
"now a mature and stable individual and is now by temperament, training and desire, capable and able to provide an environment and foster an attitude, conducive to the best interest, welfare and happiness of these young girls."
Mrs. Powers also alleged that she and her (then) current husband, John E. Bride, attended *154 the Presbyterian Church regularly and intended for Tiffany and Ashley to do likewise.
On November 30, 1973, the Family Court of East Baton Rouge Parish changed custody of the minors to Mrs. Powers. The court held that since parents have legal and natural rights to the custody of their children, in a contest between a parent and a third party to whom custody had been granted, the parent has no "double burden" of proof, but need only show that the situation which deprived the parent of custody has been corrected. The court noted that while prior to December 20, 1972, Mrs. Powers had engaged "in an immoral, dissolute way of life," she had since then become stable and was a suitable parent.
From November 30, 1973, to January, 1979, Mrs. Powers continued to have legal custody of the minors. However, in August, 1978, James Thom, IV, refused to return Tiffany and Ashley to their mother following a period of visitation with him. During the fall and over the Christmas holidays, Mrs. Powers and Mr. Thom alternated physical custody of the minors in a series of child snatchings.
On January 9, 1979, Mrs. Powers filed a writ of habeas corpus and a rule for contempt against Mr. Thom. He answered and filed a rule for change of custody on January 18, 1979, alleging that Mrs. Powers' acts had made her an unfit mother. On February 26, 1979, the Family Court changed custody from Mrs. Powers to Mr. Thom. This judgment is presently before us.
Plaintiff-appellant, Mrs. Powers, urges that the trial court made three errors in awarding custody of the minors to Mr. Thom. First, that the trial court failed to properly apply the "double burden" standard. Second, that the decision was based on facts not in existence at the time of the filing of the rule to change custody. Third, that the behavior of defendant-appellee, James Thom, IV, was not taken into consideration.

I. DOUBLE BURDEN
The rule for determining custody is LSA-C.C. Art. 157.
"A. In all cases of separation and divorce, permanent custody of the child or children shall be granted to the husband or the wife, in accordance with the best interest of the child or children."
Thus, the paramount consideration is always the child's welfare. Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971). Generally, it is in the child's best interest for custody to be awarded to the mother, especially when the child is of tender years. Such custody should not be denied unless the mother is morally unfit or otherwise unsuitable. Fulco v. Fulco, supra; Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960); Drouin v. Hildenbrand, 235 La. 810, 105 So.2d 532 (1958).
Once the trial court has made a considered decree of permanent custody, Louisiana law requires the party seeking a change to bear the double burden of showing that the continuation of present custody is deleterious to the children and that a change would be in the children's welfare. Schlegel v. Schlegel, 367 So.2d 904 (La.App. 4th Cir. 1979); Cambre v. Cambre, 372 So.2d 715 (La.App. 4th Cir. 1979); Languirand v. Languirand, 350 So.2d 973 (La.App. 2d Cir. 1977); Monsour v. Monsour, 347 So.2d 203 (1977); Fulco v. Fulco, supra. See also Hays v. Hays, 365 So.2d 563 (La. App. 1st Cir. 1978); McCarstle v. McCarstle, 356 So.2d 491 (La.App. 1st Cir. 1977).
An award of custody is a considered one where the facts and law are reviewed prior to the award. Stevens v. Stevens, 340 So.2d 584 (La.App. 1st Cir. 1976). In the instant case, the November 30, 1973, custody decree was a considered one. In changing custody to Mr. Thom, the trial court's reasons concluded:
"this Court feels that the double burden has been satisfied inasmuch as this Court finds that not only is Mrs. Powers unfit to have the custody of these children but Mr. Thom is able to provide a good home and better environment for the children." *155 This determination was only made after the trial court considered all the law and facts. Thus the "double burden" test was applied.

II. FITNESS OF MRS. POWERS
Mrs. Powers allowed her paramour, David Tureau, to move into the apartment she shared with her ten and twelve year old daughters. While Tureau shared her bed and engaged in sex with her for more than six months, Mrs. Powers was still married to, but separated from, her second husband, John E. Bride. Mrs. Powers testified that she saw nothing wrong in living with a man to whom she was not married. She also testified that she would teach her young daughters "to not be extremely judgmental about other people's life styles." Mrs. Powers explained that she did not cease living with her paramour because it was immoral, but only because it might cause her to lose custody. Mrs. Powers further testified that she no longer encouraged her daughters to attend church and wanted them to avoid "getting into a dogmatic type of religion."
The trial court was greatly troubled by Mrs. Powers' conduct and philosophy as shown by excerpts from his written reasons for judgment:
"The testimony that concerns the Court deeply is the testimony of Mrs. Powers, wherein she expresses her philosophy that there is nothing wrong with a woman living with a man not her husband with children of a previous marriage present if there was a marriage type relation and `if there were not legal problems'....
Mrs. Powers has succeeded in convincing the Court that not only did she see nothing wrong with that situation, but that had Mr. Thom not learned of the relationship and decided it was harmful to the welfare of the children, she would still be living with Mr. Tureau. Her only concern seemed to be the fact that such a relationship could cause legal problems for her and never indicated that she thought the relationship could be harmful to the children; ...
The Court finds that Mrs. Powers completely disregarded the moral well-being of her children in allowing them to live in such a situation; .... the law as it now stands provides that such conduct may still be a cause for the loss of custody."

III. CONTEMPT OF JAMES THOM
The contempt of court of James Thom, IV, is a factor to be considered in awarding custody. Bankston v. Bankston, 355 So.2d 58 (La.App. 2d Cir. 1978). However, it must be noted that Mr. Thom, when he removed the minor children from their custodial parent, Mrs. Powers, was attempting to terminate the very conditions which induced the trial court to order a change of custody.

IV. CONCLUSIONS
Considering all factors, the trial court found that maintaining custody with Mrs. Powers would be harmful and that the better interests of Tiffany and Ashley would be served by residing with their father. We agree.
The trial court has great discretion in cases of this type. As stated by this court in Howard v. Howard, 339 So.2d 1275 (La. App. 1st Cir. 1976):
"[T]he determination of the trial judge should be accorded great weight, for he is in a better position to determine the best interest of the child based upon his overview of the conduct and character of the parties. Therefore, his exercise of discretion will not be disturbed except upon a clear showing of an abuse of the discretion accorded him."
See also Stevens v. Stevens, supra.
We agree with the fact findings and award of custody made by the trial court. We discern no abuse of the trial court's discretion.
The judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.