NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-514

EDWARD GARY MITCHELL

VERSUS

SANDRA MARIE MITCHELL

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2009-3555
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and John E. Conery, Judges.

AFFIRMED.

**Andrea Ducote Aymond**
**Aymond Law Office**
**121 S. Washington Street**
**Marksville, LA 71351**
**(318) 240-7232**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Edward Gary Mitchell**

**Bradford H. Felder**
**G. Andrew Veaey**
**Huval, Veazey, Felderm, & Renegar, L.L.C.**
**2 Flagg Place**
**Lafayette, LA 70508**
**(337) 234-5350**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Sandra Marie Mitchell**

**PETERS, J.**

Sandra Marie Mitchell appeals a trial court judgment naming her former husband, Edward Gary Mitchell, the primary custodian of their daughter; terminating Mr. Mitchell's previously set child-support obligation; rejecting two separate rules for contempt of court filed by Mrs. Mitchell; and deferring other matters related to the litigation to a later hearing. In her appeal, she raises seven assignments of error, and, for the following reasons, we find no merit in these assignments of error and affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

Edward Gary Mitchell and Sandra Marie Mitchell were married on January 17, 1985, and divorced on July 12, 2010. Three children were born of the marriage, and this litigation involves the custody of the remaining minor child, Abby Nicole Mitchell (Abby),[1] who was born on December 8, 1997. The initial pleading addressing Abby's custody is a consent judgment, which was filed one month after Mr. Mitchell filed his May 14, 2009 petition for divorce. This June 15, 2009 consent judgment awarded the parents joint custody and named Mrs. Mitchell the domiciliary parent. Additionally, it set a specific visitation schedule for Mr. Mitchell; ordered that he pay $50.00 per week in child support and one-half of the extracurricular school activities and school expenses; ordered that he maintain medical insurance on Abby; and addressed certain aspects of community property division, possession, and obligations. At the time of the consent judgment, both parents were residing in Avoyelles Parish, Louisiana.

While the parties did litigate other issues after the divorce, the custodial arrangement remained the same until June 2013, when Mr. Mitchell filed

---

[1] The minor's name is spelled "Abbie" in some places in the record, and spelled "Abby" in other places. We will use the spelling on the minor's school records, which were introduced into evidence.

pleadings seeking to be named the domiciliary parent. This and other issues raised from the subsequent pleadings filed by the parties, came to trial on February 18, 2014. After completion of the evidentiary phase of the trial, the trial court took the matters under advisement. On March 6, 2014, the trial court issued extensive reasons for judgment wherein it retained the joint custody relationship, but named Mr. Mitchell as the primary custodial parent, awarded Mrs. Mitchell specific visitation privileges, and set forth requirements concerning the manner in which the parents were to treat each other in the future. The trial court also rejected specific claims raised by rules for contempt of court filed by Mrs. Mitchell, terminated Mr. Mitchell's child support obligation, and reserved the issues of child support owed by Mrs. Mitchell and a separate claim for contempt of court involving a hospitalization coverage issue to a future hearing.

The trial court executed a judgment in conformity with its reasons for judgment on the same day it issued its reasons for judgment and, thereafter, Mrs. Mitchell perfected this appeal. In her appeal, Mrs. Mitchell raised the following assignments of error:

> 1. The trial court erred in failing to first determine there was no material change in circumstances justifying a change in custody.

> 2. The trial court erred in determining that it is in Abby's best interest to have Gary named domiciliary parent and, in effect, holding that Gary overcame the legal presumption that Sandra's decision to enroll Abby in the gifted program at Lafayette High School was in Abby's best interest.

> 3. The trial court erred in limiting Sandra's custodial periods to four days per month and a few holiday days with no extra time during the summer.

> 4. The trial court erred in allowing the child, Abby, to determine the dates, times, and places of Sandra's custodial periods.

5.  The trial court erred in drawing conclusions about evidence that was ruled inadmissible and in questioning a witness about that evidence after ruling it inadmissible.

6.  The trial court erred in failing to hold Gary in contempt for his blatant manipulation of the trial date in this matter, by failing to pay for the mental health evaluation that he requested or which he was ordered to pay, and for failing to follow certain provisions in the prior Consent Judgments.

7.  The trial court erred when it granted temporary custody pending a trial set on November 4, 2013 without evidence supporting a finding of immediate and irreparable harm.

**OPINION**

The trial court's reasons for judgment are seventeen pages in length and contain an extensive breakdown of the procedural and factual history of this litigation, the factual determinations it made in reaching the judgment before us, and the law applicable to the issues raised. Rather than reproduce the content of these well-written reasons for judgment, we incorporate them in this opinion by reference.

Considering the content of the trial court's reasons for judgment, we now turn to the assignments of error asserted by Mrs. Mitchell. In doing so, we recognize that La.Civ.Code art. 131 provides, "In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." Additionally, we also recognize that each child custody case must be viewed in light of its own particular set of facts and circumstances, with the paramount goal of reaching a decision that is in the best interests of the child. *Barberousse v. Barberousse*, 556 So.2d 930 (La.App. 3 Cir. 1990). The best interest evaluation is fact-intensive and requires the weighing and balancing of factors opposing or favoring custody in the competing parties based on the evidence presented in each case. *Romanowski v. Romanowski*, 03-124 (La.App. 1

3

Cir. 2/23/04), 873 So.2d 656. Additionally, the trial court is vested with broad discretion in deciding child custody cases and its decision will not be disturbed absent a clear abuse of discretion. *Bagents v. Bagents*, 419 So.2d 460 (La.1982).

We also note that in this case, as in most child custody cases, the trial court's determination was based heavily on factual findings. It is well settled that an appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Stobart v. State, DOTD*, 617 So.2d 880 (La.1993).

### *Assignment of Error Number One*

Before considering whether the trial court's judgment satisfied the "best interests" test, we must consider Mrs. Mitchell's first assignment of error wherein she correctly points out that the trial court must also find a material change of circumstance before it can rule on Mr. Mitchell's request for the change of domiciliary parent designation. As pointed out in *Beard v. Beard*, 599 So.2d 486, 488-89, (La.App. 3 Cir. 1992) (citations omitted):

> When no evidence is adduced at the district court level prior to the entry of the joint custody order which is sought to be modified, that joint custody decree is not a "considered decree" within the meaning of *Bergeron* [*v. Bergeron*, 492 So.2d 1193 (La.1986)]. In this situation, the heavy burden of proof is not applicable, but the moving party must still prove a material change in circumstances since the

4

> entry of the original decree and that the modification proposed is in the best interest of the child. Every child custody case must be decided based only on its own particular facts and circumstances. On appellate review, the determination of the trial court in establishing or modifying custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion.

Neither of the two prior custody judgments in this matter were considered decrees and, therefore, Mr. Mitchell was not required to establish the extra burden of proof required by *Bergeron* in order to obtain a modification of the prior custody order. Mrs. Mitchell acknowledges that *Bergeron* does not apply to this litigation, but argues that the trial court failed to find a material change of circumstances before addressing the "best interest of the child" issue.

We find no merit in this assignment of error. The trial court clearly found that Mitchell's relocation to Lafayette, Louisiana, constituted a material change of circumstances. As pointed out by the trial court in its reasons for judgment, before Mrs. Mitchell moved to Lafayette, Abby had spent her entire life in and around the Cottonport/Bunkie area of Avoyelles Parish, Louisiana. She had attended Avoyelles Parish schools, built lasting friendships, and involved herself in all sorts of academic and extracurricular activities. Additionally, both her maternal and paternal extended families reside in Avoyelles Parish. On the other hand, Abby had no connection to Lafayette and, while she excelled academically at Lafayette High School, her extracurricular activities were limited to music/singing lessons, and the trial court found in its reasons for judgment that at school she only "met and became friendly with three individuals[.]"

From the moment she moved to Lafayette, Abby began to express her desire to return to the Cottonport/Bunkie area and reside with her father. The trial court found that this expressed desire caused Mrs. Mitchell to become antagonistic toward Abby, even to the extent of accusing her of betrayal. Mrs. Mitchell even

objected to Abby trying to maintain a relationship with her relatives on her mother's side who lived in Avoyelles Parish. In fact, although Mrs. Mitchell asserted in testimony that the move to Lafayette was "because [her] support group was there" and because "it was better educational wise for Abby[,]" the trial court concluded factually that Mrs. Mitchell made the move because of problems with her own family in Avoyelles Parish. These problems had their origin in the breakup of her marriage, and Mrs. Mitchell's anger toward them arose because she felt they had taken Mr. Mitchell's side in that breakup. In analyzing Mrs. Mitchell's testimony overall, the trial court classified it as "amazing" and we read the reasons for judgment to conclude that that classification was not meant to be complimentary. The trial court further stated that Mrs. Mitchell "has some extremely unique beliefs as a mother[,]" and that it had "never witnessed an attitude as presented by [her]." The trial court found that in her testimony Mrs. Mitchell "had a very convenient memory; was very coy at times; and also reflected a streak of meanness at times."

Our review of the evidentiary record causes us to find no manifest error in the trial court's factual determinations concerning the move by Mrs. Mitchell to Lafayette, the reasons for the move, and the effect that move had on the relationship between Abby and Mrs. Mitchell. Furthermore, we find that these factual determinations establish a material change of circumstances sufficient to satisfy Mr. Mitchell's burden of proof on this element.

### *Assignment of Error Number Two*

In this assignment of error, Mrs. Mitchell asserts that the trial court erred in concluding that Mr. Mitchell had satisfied his burden of proof in that he failed to

6

establish that the change in domiciliary-parent status was in Abby's best interest. We disagree.

Louisiana Civil Code Article 134 provides a minimum of twelve factors which the trial court is required to consider in applying the "best interest" standard of La.Civ. Code art. 131. These factors are:

> (1) The love, affection, and other emotional ties between each party and the child.

> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

> (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (6) The moral fitness of each party, insofar as it affects the welfare of the child.

> (7) The mental and physical health of each party.

> (8) The home, school, and community history of the child.

> (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

> (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

> (11) The distance between the respective residences of the parties.

> (12) The responsibility for the care and rearing of the child previously exercised by each party.

In its reasons for judgment, the trial court specifically considered each of these twelve factors, and in doing so, found that all but three favored Mr. Mitchell and

that two of the remaining three (the third and sixth factors) favored neither parent. The only factor found in favor of Mrs. Mitchell was the twelfth, but even in that analysis, the trial court found that Mrs. Mitchell's dispute with her own family had caused her "to lose sight" of her abilities to function as a responsible mother.

Considering the record as a whole and the trial court's well-reasoned factual determinations, we find no abuse of discretion on the part of the trial court. Therefore, we find no merit in this assignment of error.

### *Assignments of Error Number Three and Four*

Louisiana Revised Statutes 9:335(A)(2) provides in pertinent part that a joint-custody-implementation order "shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequently and continuing contact with both parents." Additionally, La.R.S. 9:335(A)(2)(b) provides that "[t]o the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally."

In its reasons for judgment addressing visitation by Mrs. Mitchell, the trial court stated the following:

> Custodial rights/visitation privileges will be awarded to [Mrs. Mitchell] in a specific fashion that will be outlined in the Judgment filed by this Court simultaneously with the filing of this opinion. This Court is of the specific belief that in this case, as well as with most sixteen year old high school students, a standard visitation plan is not in the best interest of the child. Further, in the case at bar, this Court specifically finds that Abbie should [be] allowed to select the times that she spends with her mother, subject to the rules and regulations which will be set forth in the Judgment.

The trial court's judgment awarded Mrs. Mitchell visitation with Abby "during a minimum of four days per month on four separate days[,]" as well as Mother's Day and the Christmas, Easter, and Thanksgiving holidays. The Mother's Day visitation is limited by the judgment to the period between 9:00 a.m. and 6:00 p.m.

8

on that day, while the other holiday periods provide for "a minimum of one day" during each holiday. The judgment provides that the dates of visitation are to be selected by Abby and scheduled by her with her mother. In her third assignment of error, Mrs. Mitchell asserts that the trial court erred in limiting her visitation to her daughter. In her fourth assignment of error, she asserts that the trial court erred in allowing Abby to set the visitation days.

While the trial court did not specifically address the provisions of La.R.S. 9:335 in its reasons for judgment, it concluded that "a standard visitation plan is not in" Abby's best interest. It reached this conclusion based on its analysis of the particulars of this matter as well as Abby's age. As previously stated, it is obvious that the trial court gave no credibility to Mrs. Mitchell's testimony and blamed Abby's "emotional roller coaster" life on her mother. Additionally, the trial court had previously noted in its reasons for judgment that while at Bunkie High School, Abby had been involved in school and extracurricular activities which took up much of her otherwise free time. One can assume that on her return to Bunkie High School she would again become involved in such activities. Thus, the trial court had to establish a balance between Mrs. Mitchell's visitation rights as a joint custodial parent and the activities of a normal active sixteen-year-old child. While recognizing that Mrs. Mitchell's visitation rights set by the trial court are minimal, we must find no manifest error in the trial court's factual conclusions concerning the circumstances surrounding the mother/daughter relationship and the effect that expansive visitation would have on the child's best interest.

Additionally, while the trial court's approach to setting the specific days of visitation is both innovative and unusual, we find no basis in the law that would preclude Abby from having an interest in setting those dates. In fact, should the

9

visitation schedule be set in stone, it may well force Abby to abandon some of her school and extracurricular activities. For example, a set schedule could often conflict with her obligation to her school softball team during that season. Given Mrs. Mitchell's attitude toward her daughter, a flexible scheduling process with Abby's input is not an abuse of the trial court's broad discretion in setting a visitation schedule.

Finally, the trial court obviously concluded that the relationship between Mrs. Mitchell and Abby is so toxic at this point that overnight visitation would be counter-productive, and concluded that a gradual approach where the relationship can be mended without forced visitation would be more effective in the long term. While we might have reached a visitation schedule with different parameters, we do not find that the trial court abused its broad discretion in the judgment herein.

### Assignment of Error Number Five

In this assignment of error, Mrs. Mitchell asserts that the trial court erred when it drew conclusions from evidence it had ruled inadmissible. This issue arises from an attempt by Mr. Mitchell to introduce a recorded cellular telephone conversation between Mrs. Mitchell and Abby. The trial court refused to allow Mr. Mitchell to play the recorded conversation at trial because Mrs. Mitchell had not been provided with the recording through pretrial discovery. In its reasons for judgment, the trial court made the comment that "[i]t is obvious that this exchange would not have reflected positive mothering skills for Sandra." Mrs. Mitchell argues that this comment constituted an improper reference to inadmissible evidence as was the questioning of witnesses concerning the characterization of the content.

In *Wright v. Bennett*, 04-1944, p. 6-7 (La.App. 1 Cir. 9/28/05), 924 So.2d 178, 183, the first circuit addressed a similar issue, and concluded:

> Louisiana Code of Evidence article 103(A) provides, in part, that "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." The proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling on the admission or denial of evidence is whether the alleged error, when compared to the entire record, had a substantial effect on the outcome of the case. If the effect on the outcome of the case is not substantial, reversal is not warranted. LSA-C.E. art. 103(A). The party alleging prejudice by the evidentiary ruling of the trial court bears the burden of so proving. *Emery v. Owens-Corporation*, 2000-2144, p. 7 (La.App. 1st Cir.11/9/01), 813 So.2d 441, 449, *writ denied*, 2002-0635 (La.5/10/02), 815 So.2d 842. Generally the trial court is granted broad discretion in its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. *Turner v. Ostrowe*, 2001-1935, p. 5 (La.App. 1st Cir.9/27/02), 828 So.2d 1212, 1216, writ denied, 2002-2940 (La.2/7/03), 836 So.2d 107.

The record before us establishes that despite her objection to the use of this portion of the recorded information on Abby's cellular telephone, Mrs. Mitchell testified extensively concerning the content of other information on Abby's cellular telephone; and Abby related the content of the conversation at issue in her trial testimony without objection from Mrs. Mitchell. Additionally, Mrs. Mitchell attempted to impeach Abby's testimony through the use of other text messages found by her on the cellular telephone. When asked by the trial court why she did not want the trial court to hear the taped conversation, Mrs. Mitchell responded that her attorney advised against it. Considering the evidentiary record as a whole, we do not find that the trial court's reference to the content of, or the testimony concerning the content of, the recorded conversation had a substantial effect on the final judgment in this matter. Therefore, we find no merit in this assignment of error.

### *Assignment of Error Number Six*

In this assignment of error, Mrs. Mitchell asserts that the trial court erred in failing to hold Mr. Mitchell in contempt of court for any one or all of her complaints in this regard. This assignment of error addresses the content of two different rules for contempt of court filed by Mrs. Mitchell after Mr. Mitchell filed his rule to change the domiciliary-parent designation.

The first of the two rules for contempt appears as a part of Mrs. Mitchell's reconventional demand filed against Mr. Mitchell on July 31, 2013. This pleading raised seven purported violations of the consent order by Mr. Mitchell, and the trial court reproduced and considered these issues in detail in its reasons for judgment, finding that with the exception of the health insurance issue, Mrs. Mitchell failed in her burden of proof on these complaints. In fact, the trial court factually concluded that Mrs. Mitchell filed these complaints as retaliation against Mr. Mitchell for his efforts to change the domiciliary-parent designation. The trial court deferred the health issue to future proceedings. We find no manifest error in the trial court's factual findings on these issues and find that the trial court did not err in refusing to hold Mr. Mitchell in contempt of court. Thus, we find no merit in this portion of this assignment of error.

Seven days before the February 18, 2014 hearing, Mrs. Mitchell filed a second motion to hold Mr. Mitchell in contempt of court. In this motion, Mrs. Mitchell asserted that Mr. Mitchell should be held in contempt of court for using an ordered psychological testing appointment to manipulate the trial court's setting of the matter for trial.

In her motion, Mrs. Mitchell asserted that on the morning of January 23, 2014, her counsel received a pleading seeking to have Mrs. Mitchell undergo a

psychological evaluation. The motion further asserted that a subsequent telephone conversation that day with Mr. Mitchell's counsel resulted in an agreement that Mrs. Mitchell would undergo the evaluation by Dr. Alicia Pellegrin, a Baton Rouge psychologist, and Mr. Mitchell would pay for it. They then continued the trial on the merits scheduled that day until February 18, 2014; and subsequently Mrs. Mitchell made arrangements for the evaluation and for the expedited preparation of an expedited report so as not to delay the scheduled trial date. According to Mrs. Mitchell's pleading, on January 30, 2014, Mr. Mitchell's counsel e-mailed her counsel to the effect that Mr. Mitchell needed to be evaluated as well. Not only did this result in total confusion of the scheduling process, but Mr. Mitchell refused to pay for the testing.

Mr. Mitchell testified that he agreed to pay for Mrs. Mitchell's psychological evaluation and that he understood it would cost $500.00. However, when he was later told the evaluation would include him and Abby, and that the cost would be up to $2,000.00, he balked. He specifically testified on cross-examination that his opposition had nothing to do with delaying the trial. He was not aware of any telephone status conference where the trial court ordered him to pay for the evaluations.

The various pleadings referenced in Mrs. Mitchell's motion were never filed in the trial court record, and the trial court itself first became involved in the issue during a February 7, 2014 telephone-status conference with the parties. In its reasons for judgment, the trial court recognized that the parties expressed an agreement that Mr. Mitchell would pay for the evaluation of Mrs. Mitchell, but noted Mr. Mitchell's testimony at trial. Specifically, the trial court found that "[Mr. Mitchell] was not a part of the telephone conservation wherein this Court indicated

13

that [he] should pay for the evaluations. This Court is unaware of any law that allows for a party to be held in contempt of court based on a verbal Order issued by a Court in a phone conference with attorneys."

Mrs. Mitchell argues that the trial court's conclusion was wrong in that there was ultimately a written order to the effect that "all costs of the psychological evaluation are to be paid by [Mr. Mitchell]" and it is this order that Mr. Mitchell violated. However, that order was signed by the trial court on February 11, 2014, which was the same day Mrs. Mitchell filed her motion for contempt of court, and days after Mrs. Mitchell's original scheduled appointment with Dr. Pellegrin. Furthermore, this order only ordered Mrs. Mitchell's evaluation and not Mr. Mitchell's or Abby's. Additionally, it provided that the evaluation was to be completed by February 14, 2014, and that the trial date remained the same, February 18, 2014. Nothing in the record suggests that Mrs. Mitchell made any effort to obtain an evaluation within the parameters of this order, and the trial proceeded as scheduled.

"The burden of proof in a civil contempt proceeding is by a preponderance of the evidence and appellate review is the manifestly erroneous standard." *McKee v. McKee*, 03-254, p. 5 (La. App. 3 Cir. 10/1/03), 856 So.2d 135, 137. We find nothing manifestly erroneous in the trial court's determination that Mr. Mitchell's refusal to pay for all three evaluations was not contemptuous under the circumstances. The trial court found that the ultimate failure to resolve this issue and obtain the psychological testing was based on the misunderstanding arising from the oral communication between the trial court and the parties, and not on any contemptuous behavior on the part of Mr. Mitchell. We find no manifest error in the trial court's factual findings on this issue. Nor do we find that the trial court

erred in not holding Mr. Mitchell in contempt of court for delaying the trial—in fact, the matter went to trial as scheduled on February 18, 2014. Thus, we likewise find no merit in this portion of the assignment of error.

### *Assignment of Error Number Seven*

In her last assignment of error, Mrs. Mitchell asserts that the trial court erred in awarding Mr. Mitchell Abby's temporary custody by an order dated November 4, 2013, without having made a finding of immediate and irreparable harm. We find no merit in this assignment of error, as well.

In its reasons for judgment, the trial court noted that on August 2, 2013, a pretrial conference agreement to award Mr. Mitchell domiciliary-parent status was set aside by a judgment signed October 1, 2013. The issue now before us arises because, when Mr. Mitchell was notified that Abby would be required to return to Lafayette with her mother, Mr. Mitchell filed his October 10, 2013 pleading to change the domiciliary-custodian designation; and in that pleading he sought an ex parte order awarding him Abby's immediate custody.

With regard to a situation where a parent seeks an ex parte order of custody, La.Code Civ.P. art. 3945(B) provides:

> An ex parte order of temporary custody of a minor child shall not be granted unless:
>
> (1) It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition.
>
> (2) The applicant's attorney certifies to the court, in writing, either:
>
> (a) The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court.

15

(b) The reasons supporting his claim that notice should not be required.

If the trial court grants an ex parte order, its duration is limited by the provisions of La.Code Civ.P. art. 3945(C)(1) to thirty days, with one possible extension of fifteen days. Additionally, the rule to show cause hearing must be set for hearing within thirty days of the ex parte order. La.Code Civ. P. art. 3945(D). Furthermore, La.Code Civ.P. art. 3945(E) provides, "Any ex parte order not in compliance with the provisions of this Article is not enforceable, and is null and void."

In his verified petition, Mr. Mitchell stated, as his factual basis supporting his assertion of immediate and irreparable injury, that Mrs. Mitchell daily badgered Abby daily concerning her whereabouts and who she was with; that Abby was experiencing physical symptoms of distress because of the possibility of returning to her mother; that Mrs. Mitchell has attempted to circumvent court hearings by purposely leaving Abby in Lafayette on trial days to avoid her testifying; that Mrs. Mitchell threatened suicide after the last hearing; and she is mentally unstable and poses a risk of fleeing with Abby.

The trial court did not sign Mr. Mitchell's ex parte order. Instead, the trial court held a hearing the next day in which both Mr. and Mrs. Mitchell participated with their counsel of record. It was only after hearing the testimony presented at that hearing did the trial court grant Mr. Mitchell temporary custody of Abby. In the same order granting temporary custody, the trial court set a hearing on the rule for November 4, 2013.

Mrs. Mitchell applied to this court for a supervisory writ asserting that the trial court had issued an improper ex parte order. In an unpublished writ denial, this court denied her relief with the following language:

16

A hearing was held before the trial court on October 11, 2013, at which counsel for all parties were in attendance and participated. Therefore, this court is not asked to review an ex parte custody ruling. Instead this court is asked to set aside a temporary custody ruling pending a full hearing set for November 4, 2013. We find no error in this ruling.

*Mitchell v. Mitchell*, 13-1185 (La.App. 3 Cir. 10/29/13) (unpublished writ).

In this assignment of error, Mrs. Mitchell does not assert that the order was of an ex parte nature, but merely argues that the trial court erred in finding that Mr. Mitchell established immediate and irreparable injury at the October 11, 2013 hearing. While the trial court's reasons for judgment do not specifically refer to the October 11, 2013 hearing, those reasons do refer to some testimony taken at that hearing, including the badgering telephone calls referred to by Abby in her testimony at the October 11, 2013 hearing; Mrs. Mitchell's unusual disappearance after the August 2, 2013 hearing; and Abby's physical and emotional condition arising from the situation in October. In the reference to this evidence, it is obvious that the trial court accepted the evidence in favor of granting the temporary-custody order and discounted completely Mrs. Mitchell's evidence. We find no manifest error in the trial court's factual findings in this regard and no error in the trial court's grant of temporary custody.

## DISPOSITION

For the foregoing reasons, we affirm the trial court's judgment awarding in all respects. We assess all costs of this appeal to Sandra Marie Mitchell.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

17