NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

18-129

AMBER LYNN LANGE FRAZIER

VERSUS

SHELTON LUNDRA FRAZIER

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-89055, DIV. B
HONORABLE LALA BRITTAIN SYLVESTER, DISTRICT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and D. Kent Savoie, Judges.

AFFIRMED.

**Robert C. Owsley**
**Murchison & Murchison, L.L.C.**
**616 Front Street**
**P. O. Box 226**
**Natchitoches, LA 71458-0226**
**(318) 352-2302**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Amber Lynn Lange Frazier**

**Shelton Lundra Frazier**
**In Proper Person**
**941 Lucille St.**
**Natchitoches, LA 71457**
**(318) 471-6788**
**DEFENDANT/APPELLANT**

**SAVOIE, Judge.**

In this custody dispute, the father, Shelton Frazier, appeals the trial court's judgment awarding the parties with shared, equal custody of their two-year-old daughter and designating the mother as the domiciliary parent. For the following reasons, we affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

Shelton and Amber Frazier were married on October 18, 2014. They have one child together, Anaiah, who was born on July 10, 2015.

Ms. Frazier filed a petition for divorce on January 6, 2017, and therein sought joint custody of Anaiah, with her being designated as domiciliary parent and with reasonable visitation given to Mr. Frazier.

Mr. Frazier filed an answer and reconventional demand on January 31, 2017, alleging that Anaiah had been in his physical custody since the parties separated on December 12, 2016. Therein, he also sought emergency temporary custody of Anaiah. He alleged that on March 26, 2016, inappropriate sexual contact had taken place between Amber's two other children from a previous relationship, T.L and S.L., while those children and Anaiah were in the care of Mr. Frazier's mother. T.L. was eight years old at the time, and S.L. was four years old. There were no allegations of sexual abuse with respect to Anaiah, who was a year old at the time.

The emergency relief Mr. Frazier sought was not granted in light of an agreement reached by the parties. They agreed to submit to a custody evaluation with Ms. Robin Miley and to share custody of Anaiah on a week-to-week basis, under the condition that Anaiah was not to be left alone with T.L. An Interim Judgment reflecting the parties' agreement was signed on February 13, 2017.

The next hearing on the matter was held April 26, 2017. An attorney was appointed to represent T.L., and the parties stipulated that T.L. and S.L. would meet with Ms. Miley in connection with the custody evaluation concerning Anaiah. The parties further agreed that the custody arrangement established by the February 13, 2017 interim judgment was to remain in effect. A judgment reflecting the parties' stipulations was signed by the court on May 12, 2017.

Prior to trial, Ms. Miley submitted a report to the trial court as requested, which recommended a shared custody arrangement. Trial on the issue of custody was held August 14, 2017. After considering the evidence, including the evaluation by Ms. Miley and her testimony, the trial court rendered a judgment on October 4, 2017, awarding the parties with joint custody of Anaiah "on an alternating one week/one week basis," with Ms. Frazier designated as the domiciliary parent.

Mr. Frazier appeals. We note that he was represented by counsel through trial in this matter; however, his appeal was filed pro se, and he is no longer represented by counsel.

**ASSIGNMENTS OF ERROR:**

On appeal, Mr. Frazier asserts the following as assignments of error:

I.  The Trial Court Failed To Make A Determination On the Best Interest of the Child by Omitting The First Nine Factors (1-9) Under La. Civil Code Article 134 And Considered Only Factors 10, 11, 12 For Designating The Custodial Parent. Such Legal Error Requires A *de novo* Determination Of the Ignored Factors in Light of the Record, or, In the Alternative, A Reversal And Remand.

II. The Trial Court Applied An Improper Standard By Viewing The Court's Expert Recommendation For Equal Shared Custody As The Baseline From Which To Set Permanent Custody. Such Legal Error Requires A *de novo* Review Of The Record, Or, At The Very Least A Reversal and Remand.

2

III. The Trial Court Misapplied La. R.S. Art. 9:335 Because The Two-Prong Test For Equal Shared Physical Custody Was Not Met And In The Absence Of A Best Interest Analysis The Statute is Rendered Inoperable. Such Legal Errors Requires A *de novo* Review of the Record, Or, In the Alternative A Reversal and Remand.

IV. The Trial Court Erred Because The Record Support[s] A 70/30 Custody Regime With Mr. Frazier having 70% and Ms. Frazier Having 30% and Mr. Frazier Designated As A Domiciliary Parent.

V. The Trial Court Erred By Finding the Expert Did Not Waiver From Her Report and Basing The Ruling on Findings Not Substantiated In The Record.

VI. The Trial Court Erred Because She Failed To Rule On the Sexual Behavior Claim Of The Two Older Children.

## ANALYSIS

### *Standard of Review:*

As recognized by this court in *Guidry v. Guidry*, 07-1272, pp. 2-3 (La.App. 3 Cir. 3/5/08), 979 So.2d 603, 605:

> An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993). This is especially applicable in a child custody dispute wherein appellate courts accord substantial deference to the trial judge's conclusions. "The trial judge is in a better position to evaluate the best interest of a child from his observance of the parties and the witnesses and his decision will not be disturbed on review absent a clear showing of abuse." *Deason v. Deason*, 99-1811, p. 2 (La.App. 3 Cir. 4/5/00), 759 So.2d 219, 220 (citing *State in the Interest of Sylvester*, 525 So.2d 604, 608 (La.App. 3 Cir.1988) (citing *Bagents v. Bagents*, 419 So.2d 460 (La.1982))).

> Every child custody case must be viewed within its own peculiar set of facts, and a trial court's award of custody is entitled to great weight and will not be overturned on appeal unless an abuse of discretion is clearly shown. *Connelly v. Connelly*, 94-527 (La.App. 1 Cir. 10/7/94), 644 So.2d 789. Both the Louisiana Legislature and the Louisiana Supreme Court have made it abundantly clear that the primary consideration and prevailing inquiry is whether the custody arrangement is in the best interest of the child. *See Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731.

In his first assignment of error, Mr. Frazier argues we should deviate from the standard of review set forth in *Guidry*, and review the record de novo because, according to Mr. Frazier, the trial court failed to consider each of the best interest of the child factors set forth in La.Civ.Code art. 134. However, we note that the trial court's judgment and incorporated reasons for ruling make clear that it did consider each of the twelve factors. First, the trial court noted: "As Ms. Miley stated in her report, factors 1-9 seem to be fairly equal for both parties." It then went on to thoroughly discuss the remaining factors. While the trial court ultimately gave some of the factors more weight than others in reaching its conclusion, it was permitted to do so. *See Hudson v. Strother*, 17-1044 (La.App. 3 Cir. 5/2/18), 246 So.3d 851. The trial court's analysis was properly focused on the best interest of the child; therefore, this assignment of error lacks merit.

In his second assignment of error, Mr. Frazier argues that it was legal error for the trial court to use Ms. Miley's custody recommendation as "the baseline" from which to determine custody, and therefore we should review the record de novo. He suggests that the trial court's analysis was based on an improper belief that it was compelled to accept Ms. Miley's recommendation. In support of his argument, Mr. Frazier cites to *W.M.E. v. E.J.E.*, 619 So.2d 707 (La.App. 3 Cir. 1993), wherein this court affirmed a trial court's decision to not accept the expert's custody recommendation because it was contrary to La.Civ.Code art. 133, which, at the time, required suspension of visitation between an abusive parent and the abused child. The *W.M.E.* court stated:

> Faced with . . . the growing use of psychological and psychiatric testimony in child custody and visitation cases, we find it necessary to again clarify the role of such expert witnesses. Expert witnesses are intended to "assist the trier of fact" in understanding the evidence or in the determination of a fact in issue. Louisiana Code of Evidence article

4

702.   Undeniably in certain cases, expert assistance may prove invaluable in the court's determination, particularly regarding issues touching on the psychological and emotional welfare of the children.

However, the ultimate "best interest of the child" decision squarely remains in the exclusive province of the court.  This decision necessarily focuses on all of the evidence and testimony presented. The trial court is not bound to follow the recommendations of an expert witness.

Moreover, the court is restrained from following an expert's recommendation when to do so would be contrary to law.  The decision to grant or prohibit visitation by the father with his daughter, in this case, rested on a conclusion of law rather than fact.  As a matter of law, the trial judge correctly refused to adopt the expert's recommendation.

*W.M.E. v. E.J.E*, 619 So.2d at 710-711.

In the instant matter, however, there was no finding that either parent had subjected the child to physical or sexual abuse, and the parties' visitation rights are not established by specific statute.  Rather, after weighing the evidence, the trial court was permitted to accept or reject Ms. Miley's custody recommendation, and its decision is reviewed under the standard enunciated in *Guidry,* 979 So.2d 603.  Therefore, Mr. Frazier's second assignment of error lacks merit.

Mr. Frazier also argues that a de novo review is appropriate because La.R.S. 9:335[1] requires equal physical custody to be both feasible and in the child's best interest; whereas, in this case, equal custody is not in Anaiah's best interest.  We note, however, that the trial court properly considered whether equal custody was both feasible and in Anaiah's best interest prior to awarding it.  Therefore, there is no legal error in the trial court's analysis that warrants de novo review.  Rather, the

---

[1] Louisiana Revised Statutes 9:335(A)(2)(b) states: "To the extent it is feasible and in the best interest of the child, physical custody   physical custody of the children should be shared equally."

5

trial court's findings are reviewed below in accordance with the standard enunciated in *Guidry*, 979 So.2d 603.

### *Review of Trial Court's Custody Award:*

Mr. Frazier's remaining assignments of error address the merits of the trial court's award of custody, so we will address them together and consider whether the trial court erred in awarding the parties with equal physical custody and in designating Ms. Frazier as the domiciliary parent.  Mr. Frazier argues that he should have been designated as the domiciliary parent and awarded with physical custody for 70% of the time, with Ms. Frazier having 30%.

"The paramount consideration in any determination of child custody is the best interest of the child." *C.M.J. v. L.M.C*, 14-1119, p. 16 (La. 10/15/14), 156 So.3d 16, 28.  The factors a court considers in determining the best interest of the child are set forth in La.Civ.Code art. 134, which, at the time of these proceedings, provided:

> The court shall consider all relevant factors in determining the best interest of the child. Such factors include:
>
> 1) The love, affection, and other emotional ties between each party and the child.
>
> 2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
>
> 3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
>
> 4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
>
> 5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
>
> 6) The moral fitness of each party, insofar as it affects the welfare of the child.

7) The mental and physical health of each party.

8) The home, school, and community history of the child.

9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

11) The distance between the respective residences of the parties.

12) The responsibility for the care and rearing of the child previously exercised by each party.

As this court stated in *Hudson v. Strother*, 246 So.3d at 858 (citations omitted):

The best interest of the child standard in a child custody case is a fact intensive inquiry that requires the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented. The trial court is not required to make a mechanical evaluation of all of the factors enumerated in La.Civ.Code art. 134 in determining what is in a child's best interest for custody purposes, nor is it bound to give more weight to one factor over another; the relative weight of each factor is left to the discretion of the trial court.

We first note that Mr. Frazier argues that the trial court's ruling was in error because "the record support[s]" an award that designates him as the domiciliary parent and gives him physical custody for 70% of the time. However, in accordance with *Guidry,* 979 So.2d 603, we do not consider whether *Mr. Frazier's* proposed custody arrangement is supported by the record, but rather whether the *trial court's* factual findings are supported by the record and whether the trial court abused its discretion in awarding custody.

Mr. Frazier argues that the trial court failed to rule on the issue concerning the alleged sexual behavior between Ms. Frazier's other children that took place in March 2016 when the parties were out of town and the children were in the care of Mr. Frazier's mother. Anaiah was a baby at the time and was napping in another

7

room when the alleged incident took place. Mr. Frazier argues that this incident is "the most important factor" that should have been considered when awarding custody. While the trial court's written reasons for ruling do not specifically address the allegations, we disagree with Mr. Frazier's suggestion that it was not considered at all. Rather, this issue was a focal point of the testimony elicited at trial, and the trial court's ruling adopting Ms. Miley's recommendation indicates that it agreed with Ms. Miley's opinion that neither T.L. nor S.L. posed a safety concern for Anaiah.

At trial, Ms. Miley testified that she interviewed both T.L. and S.L. separately, and she testified as follows:

A. I believe I said in my report, I refer to [ the March 2016 incident] as exploratory play. . . .

. . . .

A. Both of the children were very remorseful to me. They, they knew they had gotten in trouble. . . . They did not have the sexual information that I would have expected from children who had engaged in a lot of sexual play.

. . . .

Q. Okay. But, So the children never admitted what happened in the closet . . . [?]

. . . .

A. I believe he said that they kissed. But no they didn't tell me exactly what went on as far as specifics of the play.

Ms. Miley further testified that the parties had responded appropriately after the situation occurred and ensured that there was adequate supervision. She concluded that T.L. posed no risk of harm to Anaiah, and she stated as follows with respect to her risk assessment:

A.     We look at history.  We also uh, look at what happened in that incident, we look at behavior problems, what's happening outside of that isolated incident. . . .  In this situation, there wasn't a lot of history that led me to believe that these children were dangerous in any way. . . . And so in assessing the risk which I felt like was my task I just felt like these children were again not dangerous if there was supervision put into place.

A. . . .  Again, I don't believe these children are predators.  I don't think they are going to seek out this little girl to hurt her.  If the adults act like parents or parents act like adults and there's supervision . . . .  There is some benefit that will come from her interacting with her siblings, not at a risk of danger but with safeguards in place, she needs to know her siblings.

After reviewing the record, we find that it adequately supports a conclusion that the March 2016 incident does not require a reduction in the amount of physical custody awarded to Ms. Frazier or designation of Mr. Frazier as the domiciliary parent.

Mr. Frazier also argues on appeal that in weighing the various factors governing the best interest of the child, the trial court failed to consider certain evidence, and as a result, erred in its analysis.  Specifically, Mr. Frazier notes the following in his brief: when Anaiah leaves Ms. Frazier's care, she is often ill or injured; he brings Anaiah to church, whereas there was no evidence concerning Ms. Frazier's spirituality; Anaiah has her own bedroom when in Mr. Frazier's care, but does not when in Ms. Frazier's care; Ms. Frazier has moved several times since the parties' separation; Anaiah is around her family when in Mr. Frazier's care; there is evidence indicating Ms. Frazier's unwillingness to co-parent; the distance between the parties resulted from Ms. Frazier's choices; and, when the parties lived together, Mr. Frazier's mother, and not Ms. Frazier, watched Anaiah during the day.  In addition, Mr. Frazier argues that the trial court erred in suggesting that Ms. Miley's trial testimony did not waiver from her written report.

At trial, testimony was elicited from Ms. Frazier, Mr. Frazier, Ms. Miley, Ms. Frazier's sister, Mr. Frazier's mother, and Mr. Frazier's sister. Ms. Miley's report, which recommended equal physical custody until Anaiah began school, was also submitted into evidence.

A review of the record indicates that while married, the parties lived in Natchitoches. After the parties separated, Mr. Frazier has primarily resided with his sister in her residence in Natchitoches with his sister's young child as well as his mother. Mr. Frazier is employed and works away from home during the day. His mother watches Anaiah while Mr. Frazier is at work. At trial, Mr. Frazier testified that he was in the process of moving into his own trailer home, which is close in proximity to his sister's home, and that Anaiah has her own bedroom there. According to Mr. Frazier, he is concerned about Anaiah's health because she is often sick when he picks her up from Ms. Frazier, and, on several instances, she has had bruises, bug bites, scratches, and a sunburn.

Since the parties' separation, Ms. Frazier and her children have, for the most part, lived with her sister and her sister's young children in a four-bedroom home on a ten-acre lot in Merryville. Ms. Frazier is employed by her father's business and works from home. She also indicated that Anaiah often plays outside. Ms. Frazier testified that, in her opinion, every time Mr. Frazier picks up Anaiah, he "does an inspection" and finds a reason to take her to the doctor. She indicated that when they were together, Anaiah suffered from six earaches, frequently had a runny nose or cough, and that the issues Mr. Frazier complained about were not new. After the parties separated, Anaiah had a surgery where tubes were inserted into her ears. Ms. Frazier also testified that Mr. Frazier failed to communicate with her concerning details of Anaiah's scheduled medical appointments, including Anaiah's ear surgery.

Ms. Miley testified that, after considering the factors governing the child's best interest, it was her opinion the parties should share physical custody of Anaiah on a week-to-week basis until two-year-old Anaiah begins school, noting that the distance between the parties will likely make this arrangement difficult when Anaiah begins school. She testified that "[n]either one of them in my opinion are bad parents." Ms. Miley did not provide a recommendation as to who the court should appoint as the domiciliary parent. Rather, she suggested that the parties' parenting history while sharing equal physical custody of Anaiah would be better established by the time Anaiah started school. This is consistent with the recommendation in her written report.

Ms. Milely indicated that the parties were relatively equal when analyzing the best interest of the child factors; however, it was her opinion that Mr. Frazier exhibited animosity towards Ms. Frazier and was more unwilling to co-parent. The following colloquy with Ms. Miley and counsel occurred at trial:

> Q. Okay. Could you expound on your statements in regards to this animosity that you were able to kind of pick up from Mr. Frazier towards Ms. Frazier?
>
> A. I think in general I got the sense that Mr. Frazier, I think he approached this relationship almost as if a knight in shining armor had ridden into [Ms. Frazier's] life and rescued her to a certain extent. He talked a lot about the opportunities that he had provided for her. He helped her get a driver's license, he helped her get a GED. She was in school at the time. . . . And I think he was very proud of that. There was a little twist to it that gave me the impression that he felt like that because of that [Ms. Frazier] owed him something. . . . I didn't get that same impression when I met with [Ms. Frazier].
>
> Q. You didn't get the same impression that she had animosity or that he saved her quite so much in a sense?
>
> A. A little of both. It wasn't as much animosity that I recognized in Ms. Frazier. It was frustration in trying to deal with Mr. Frazier. . . . he gave her the impression that now he had a right to, in a sense lord over her with regards to the child. And she felt like she was an

independent woman that yes he had given her those opportunities but she'd actually done the work for them.

. . . .

A. . . . I got the impression that Mr. Frazier felt like he had a right to call the shots with the little girl rather than talking with Ms. Frazier and getting her opinion on things.

. . . .

A.    . . . But he does seem to have uh, I think when he gets too emotional, he can get aggressive. I don't believe it's an intent to harm. I think his emotions just get the best of him. I think he truly feels like he can take care of this little girl better than Ms. Frazier can. Uh, and so . . . I was hoping that in writing the report he would recognize this and just step back a little bit and enjoy parenting. More in a way where he could work with the mother rather than against her.

. . . .

A. . . . I got the impression that that Mr. Frazier had a clear idea in his head how he felt like his children needed to be raised, his daughter. I don't fault that. However, other parents don't always raise children like we think they need to be raised. So that's where co-parenting comes in, working together, rather than just kind of circumventing the other parent out of the situation.

In its reasons for awarding equal physical custody and designating Ms. Frazier

as the domiciliary parent, the trial court stated as follows:

Ms. Miley recommended that the Court order a shared custody arrangement identical to the present Interim Judgment, until the child is school age. . . .

The Court shall award custody of a child in accordance with the best interest of the child. Further, La[.]R.S. 9:335A(2)(b) states, "To the extent feasible and in the best interest of the child, physical custody of the children should be shared equally.". . . .

Ms. Miley testified at the hearing[,] and the testimony she gave did not waiver from her report. Ms. Miley found Ms. Frazier was cooperative and a good parent. Initially she had concerns that Ms. Frazier would be overwhelmed because she had two other children. According to her testimony[,] she stated that she actually felt that "Amber did better in the interview than Shelton did".

12

During her testimony, Ms. Miley stated that she had concerns about Mr. Frazier, finding that he "seemed to focus on Amber's inadequacies and his superiority over her". Further, she was "concerned about his dominating personality and how it may affect his parenting efforts. I am not sure Shelton has any intentions of working with Amber and raising Anaiah." Mr. Frazier re-inforced [sic] this by his testimony at the hearing. Despite Ms. Frazier's having raising the children before their separation, he now says that he should be the parent with a 70/30 custody arrangement, with Ms. Frazier only having Anaiah 30% of the time. He also stated that it is not in Anaiah's best interest for there to be shared custody on a 50/50 basis, despite the recommendation of the Court's expert. This is exactly what Ms. Miley was worried about; that Mr. Frazier would not co-parent with Ms. Frazier.

As Ms. Miley stated in her report, factors 1-9 [of La.Civ.Code art. 134] seem to be fairly equal for both parties. Therefore, the court should focus on factors 10, 11, and 12.

Factor 10, "The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party[,]" is the essence of co-parenting. Ms. Miley felt that this would be a problem for Mr. Frazier, since he felt that Ms. Frazier should be indebted to him forever for helping her get her life on track. Further, at the hearing, Ms. Miley thought that Mr. Frazier would not co-parent with Ms. Frazier.

Factor 11 is very significant in that it led Ms. Miley to recognize that her recommendation of shared custody would only last until the child reaches school age. At that time, due to the distance between the parties' residences, one party would have to be named domiciliary parent, subject to the other's visitation rights.

Factor 12, "the responsibility for the care and rearing of the child previously exercised by each party." During her testimony, Ms. Frazier testified that she had cared for the child when the parties were together since Mr. Frazier worked and she was home with her other children. Mr. Frazier also admitted that Ms. Frazier had been the parent who was at home raising Anaiah until the parties separated in December 2016. Even though Ms. Frazier has raised her two other children, Mr. Frazier testified he was more experienced as a parent due to the numerous nieces and cousins that he had helped raise. Mr. Frazier refused to admit that Ms. Frazier had more experience as a parent than he has, despite his only being a parent for two years.

Ms. Miley testified that it was in the best interest of Anaiah that the shared custody arrangement continue in effect at least until the child reached school age. Further, this arrangement is definitely feasible as

demonstrated by the fact that the parties have been exercising physical custody in this matter since February 1, 2017.

Ms. Miley's recommendation and report were supported by her testimony. Mr. Frazier testified that he did not agree with Ms. Miley's recommendation and instead he recommended that Ms. Frazier only have visitation on a 70/30 basis with him having 70% of the time. This merely reflects to the Court his inability to accept any co-parenting or equal standing with Ms. Frazier. As Ms. Miley suggested, both parties need to work equally and see each other as equals in order for them to properly raise this child. Mr. Frazier clearly does not see Ms. Frazier as an equal as a parent by his own testimony. Mr. Frazier is not considering the best interest of the child.

After thoroughly reviewing the record, with substantial deference given to the trial court as required by *Guidry,* 979 So.2d 603, we find that the trial court did not abuse its discretion in adopting Ms. Miley's recommendation of equal physical custody and that the record supports a finding that an equal physical custody arrangement was both feasible and in Anaiah's best interest. In addition, we note that the trial court seemed most concerned with evidence as to Mr. Frazier's unwillingness to co-parent with Mrs. Frazier and that this weighed in Ms. Frazier's favor when awarding domiciliary status. We find that the record adequately supports this conclusion as well, and there was no abuse of discretion on the part of the trial court.

## **DECREE**

For the reasons stated above, the ruling of the trial court is affirmed. Costs of this appeal are assessed to the appellant, Mr. Shelton Frazier.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3

14